**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roger Allen CLARK (93–5596); Jeffrey**
**Mullins (93–5597), Defendants–**
**Appellants.**

**Nos. 93–5596, 93–5597.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1993.

Decided March 14, 1994.

Eldred E. Adams, Louisa, KY, argued for appellant Roger Allen Clark in 93–5596.

Thomas L. Self, Lexington, KY, argued for appellee U.S. in 93–5596.

Before: KEITH and JONES, Circuit Judges; and LIVELY, Senior Circuit Judge.

KEITH, Circuit Judge.

Defendants–Appellants Roger Allen Clark ("Clark") and Jeffrey Mullins ("Mullins") appeal their jury convictions. Mullins was charged in a three count indictment for three unarmed robberies of an FDIC insured bank in violation of 18 U.S.C. § 2113(a). Clark was charged with aiding and abetting Mullins in the last robbery in violation of 18 U.S.C. § 2113(a). Due to Mullins' failure to address any issues, we **AFFIRM** Mullins' conviction. For the reasons stated below, we **AFFIRM** the judgment of the district court with regard to Clark.

### I.

During the summer of 1992, Mullins lived with his girlfriend, Marie Adams ("Adams"), and her two children, ages 15 and 11. In June 1992 Mullins bought a 1981 brown Firebird for Adams.

On July 17, 1992, just after 11 a.m., Doris Galligher ("Galligher") saw a dark colored Pontiac Firebird approach a nearby laundromat near Ashland, Kentucky. Galligher was unable to identify the driver of the Firebird. Minutes later, a man resembling Mullins pulled into the same laundromat's parking lot driving a black Ford Tempo. He exited the car and approached the Firebird. After Mullins departed in the Ford, the Firebird remained in the lot for 15–20 minutes, and left at about 11:30 a.m.

At approximately 11:30 a.m., a man identified as Mullins robbed the Westwood Branch of the First American Bank, located one block from the laundromat. According to witnesses, Mullins approached a teller, displayed a robbery note, and demanded cash. The teller gave him $3,416.00, which he placed in his pocket. Mullins fled in a black Ford unaccompanied.

Rex Elam ("Elam") observed the black Ford pull into the parking lot of a market located about a half a mile from the bank. Moments later Elam noticed a brown sports car leave the market's parking lot. Boyd County Deputy Ronald Mullins (unrelated to Jeffrey Mullins) heard a description of the bank robbery vehicle, and around noon, found the abandoned Tempo at the market. Fingerprint dusting of the Tempo revealed Mullins' fingerprints.

On September 15, 1992, Mullins was indicted for the July 17, 1992 bank robbery, and two previous bank robberies. Three weeks later, Clark was indicted for aiding and abetting Mullins in the July 17 bank robbery.

Mullins and Clark were tried together on January 11, 1993.

At trial, Adams testified for the government. She indicated that near the end of June and in early July, Mullins took her Firebird, robbed two banks on separate occasions,[1] and gave her a total of $3,250.00 from the robbery proceeds.

On July 16, the day before the third robbery, Adams testified she arrived home and found Mullins and Clark. Both left, and when Mullins returned at 5:00 a.m. the following morning, he requested she awaken him at 8:00 a.m. because he was going to rob a bank. She testified she actually woke him at 9:00 a.m. on July 17, and stated:

> ... I asked him if he was going to have help on this one, and he said no. I said, "Is Roger (Clark) going to help you," and he said yes. And I said, "what time was you supposed to go get him?" and he told me ...

(JA p. 188).

Adams claimed Mullins left, and later returned with Clark. Mullins went into the bathroom, and as he shaved, Adams approached him. She testified:

> ... I told him (Mullins), "I thought you was going to wear your beard for this one," and he said no, he decided to shave, and he said, "We are going to hit the Westwood Bank."

(JA p. 189).

At approximately 10:30 a.m., Mullins and Clark left with Clark driving Adams' brown Firebird and Mullins driving the black Ford. Adams stated that Mullins and Clark returned just before noon in the Firebird. Mullins again approached Adams, who was in the bathroom, and she testified:

> He told me that—he did the job—Well, that was before Roger went in, I asked him (Mullins) if he did it, and he said yeah, that they robbed the Westwood Bank.

(JA p. 192).

Adams claimed Mullins also instructed her to tell Clark to come into the bathroom and to have her son retrieve a black bag from the Firebird. The bag was retrieved and Clark

entered the bathroom. A few moments later, Clark ran from the house. Adams testified:

> And then after Roger ran out of the bathroom, he (Mullins) said that—I asked him what happened, and he said Roger (Clark) got sick, that he was a wimp, that he couldn't handle it any better than anybody else could. Everybody wanted part of the money, but they couldn't handle the job.

(JA p. 192–93).

Mullins then went outside. After Adams saw a noon television news broadcast describing Mullins as the bank robber, she went outside and told Mullins about it in Clark's presence. Adams later drove Clark to a motel, and when she returned, Mullins told her he secured over $3000.00 in robbery proceeds but had only $1,700.00 left.

On January 14, 1993, the jury found Mullins guilty on three counts of robbery, and Clark guilty of aiding and abetting the third robbery. This timely appeal followed.

## II.

On appeal, Clark asserts the presence of five security officers at his trial unfairly prejudiced him and that the district court erred by admitting out-of-court statements of Mullins under the hearsay exception for co-conspirator statements.

### A.

Clark first argues that because the presence of five United States Marshals during his trial unfairly suggested to the jury he was dangerous, their presence was inherently prejudicial. We disagree.

To establish that a proceeding was inherently prejudicial, a defendant must show that the alleged misconduct was either inherently prejudicial or caused actual prejudice. *United States v. Barger,* 931 F.2d 359, 371 (6th Cir.1991); *Holbrook v. Flynn,* 475 U.S. 560, 572, 106 S.Ct. 1340, 1348, 89 L.Ed.2d 525 (1986). The degree of security provided at trial is within the sound discretion of the trial judge. *Barger,* 931 F.2d at 371; *United States v. Christian,* 786 F.2d

---

1. These two robberies were performed without the assistance of Clark.

203, 215 (6th Cir.1986); *Payne v. Smith,* 667 F.2d 541, 544 (6th Cir.1981) *cert. denied,* 456 U.S. 932, 102 S.Ct. 1983, 72 L.Ed.2d 449 (1982).

The record reveals the district court did not find the presence of five security officers inherently prejudicial. Earlier, Clark violated his bond and thus posed a security risk. The officers were extremely sensitive to escape risks, and therefore, necessary for security purposes. Upon inquiry about the number of officers by Clark's counsel, the district court stated they would not all be in the courtroom simultaneously. Clark's counsel never specifically objected or articulated grounds establishing the security personnel unfairly prejudiced Clark.

Clark failed to satisfy his burden of demonstrating actual prejudice or that the presence of the guards was inherently prejudicial by denying him a fair trial. We, therefore, find the district court did not abuse its discretion in allowing the presence of the security guards, and reject Clark's contention he was prejudiced in this situation.

### B.

Clark next argues the trial court improperly admitted into evidence out-of-court statements implicating Clark made by Mullins to Marie Adams on the day of the robbery. Clark maintains these statements were erroneously admitted as non hearsay statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence, commonly known as the "co-conspirator exception." We disagree.

■ Clark maintains the government failed to establish: (1) Clark was a member of the conspiracy; and (2) Mullins' statements were made in furtherance of the conspiracy. Rule 801(d)(2)(E) provides that "(a) statement is not hearsay if . . . (t)he statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). To admit statements under 801(d)(2)(E), the government must establish that: (1) a conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the statement was made in furtherance of the conspir-

acy. *United States v. Vinson,* 606 F.2d 149 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). These are factual determinations which we review for clear error. *United States v. Gessa,* 971 F.2d 1257, 1261 (6th Cir.1992) (en banc).

### 1.

■ In challenging Mullins' out-of-court statements, Clark first argues the statements were improperly admitted because the government failed to provide sufficient corroborating evidence independent of Adams' testimony to link Clark to the conspiracy.

■ Before hearsay statements of a co-conspirator can be entered into evidence, a defendant's participation in the conspiracy must be established. *Vinson,* 606 F.2d at 152. The prosecution must establish these facts by a preponderance of the evidence. *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). Prior to congressional adoption of Fed. R.Evid. 104(a), proof of a conspiracy required evidence independent of the hearsay statement itself ("the independent evidence rule"). *Fuson v. Jago,* 773 F.2d 55, 59 (6th Cir.1985), *cert. denied, Seiter v. Fuson,* 478 U.S. 1020, 106 S.Ct. 3334, 92 L.Ed.2d 739 (1986). It was believed a hearsay statement should not "lift itself by its own bootstraps to the level of competent evidence." *Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). Later, in *Bourjaily,* the Supreme Court determined the adoption of Rule 104(a) altered the "independent evidence" rule, and held that a co-conspirator's hearsay statement could be considered in determining the existence of a conspiracy. The Court explicitly refrained, however, from determining whether a district court could rely "solely upon (the defendant's) hearsay statements to determine that a conspiracy had been established by a preponderance of the evidence." *Bourjaily,* 483 U.S. at 181, 107 S.Ct. at 2781.

■ Since *Bourjaily,* all circuits addressing the issue have explicitly held absent *some* independent, corroborating evidence of defendant's knowledge of and participation in the conspiracy, the out-of-court statements

remain inadmissible.[2] Our circuit's acquiescence to this rule is evidenced by our mention of existing independent evidence whenever this issue arises.[3]

■ Although out-of-court statements are presumptively unreliable, this presumption may be rebutted by appropriate and sufficient independent evidence. *Bourjaily,* 483 U.S. at 179–80, 107 S.Ct. at 2780–81. "Some" independent evidence is not merely a scintilla, but rather enough to rebut the presumed unreliability of hearsay. Admissibility of the hearsay, therefore, hinges on whether some sufficiently corroborating evidence exists which overcomes the suspected unreliability of out-of-court statements. *United States v. Silverman,* 861 F.2d 571, 579 (9th Cir.1988).

Here, the district court specifically found evidence independent of Mullins' out-of-court statements to corroborate Clark's involvement in the conspiracy. (JA p. 296). Adams witnessed Clark at her home the night before the robbery. Additionally, Clark was at her house immediately before and after the crime. A witness independent from Adams testified he saw the brown Firebird in close proximity to the crime. Upon their return, Adams witnessed Clark driving the brown Firebird.

■ On review, we must accept the witness' statements as true for purposes of determining sufficiency of the evidence. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358 (3rd Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Here, we find the independent evidence sufficiently corroborates the out of court statements to establish Clark's participation in a conspiracy by a preponderance of the evidence.

**2.**

■ Clark next asserts Mullins' statements were erroneously admitted because they were not "in furtherance of the conspiracy," as required by 801(d)(2)(E). The district court found Mullins' statements that Clark helped him in the robbery and "didn't have the stomach for it" were in furtherance of the conspiracy. (JA p. 303).

■ A statement is "in furtherance of" a conspiracy if it is intended to promote the objectives of the conspiracy. *United States v. Hamilton,* 689 F.2d 1262, 1270 (6th Cir.1982), *cert. denied,* 458 U.S. 1117, 103 S.Ct. 753, 754, 74 L.Ed.2d 971 (1983). The statement need not actually advance the conspiracy to be admissible. *Id.* Additionally, statements which identify the participants and their roles in the conspiracy are made "in furtherance" of a conspiracy. *United States v. Hitow,* 889 F.2d 1573, 1581 (6th Cir.1989); *United States v. Magee,* 821 F.2d 234, 244 (5th Cir.1987); *United States v. Handy,* 668 F.2d 407, 408 (8th Cir.1982). Where the admissibility is a close call, the trial judge's findings should generally remain undisturbed. *Hamilton,* 689 F.2d at 1270–71.

Mullins' statements to Adams clearly identified Clark as a participant, and commented on Clark's inadequate performance in his role. Additionally, Mullins' statements, often a product of Adams' badgering, induced her to conceal the crimes, to allow use of her automobile to execute the robberies, and to allow use of her home to plan the robberies. We find, therefore, the district court's determination that Mullins' statements to Adams regarding Clark were made "in furtherance of" the conspiracy was not clearly erroneous and should remain undisturbed.

**2.** *United States v. Gambino,* 926 F.2d 1355, 1361 n. 5 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 415, 116 L.Ed.2d 436; *United States v. Garbett,* 867 F.2d 1132, 1134 (8th Cir.1989); *United States v. Gordon,* 844 F.2d 1397, 1402 (9th Cir.1988); *United States v. Zambrana,* 841 F.2d 1320 (7th Cir.1988); *United States v. Daly,* 842 F.2d 1380, 1386 (2d Cir.), *cert. denied, Giardina v. United States,* 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988).

**3.** *See United States v. Jenkins,* 4 F.3d 1338, 1348 (6th Cir.1993); *United States v. Petway,* 932 F.2d 970 (6th Cir.1991) (unpublished per curiam); *United States v. Moser,* 870 F.2d 658 (6th Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3196, 105 L.Ed.2d 704 (1989) (unpublished per curiam); *United States v. Radabaugh,* 840 F.2d 18 (6th Cir.), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2023, 100 L.Ed.2d 609 (1988) (unpublished per curiam).

### 3.

Based upon the above findings, the district court concluded Rule 801(d)(2)(E) permitted Mullins' out of court statements to fall under the hearsay exception. This is a question of law, which we review *de novo*. *United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir.1992) (en banc); *United States v. Blakeney*, 942 F.2d 1001, 1020 (6th Cir.), *cert denied*, —— U.S. ——, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991). In this case, we find the district court properly applied the law and admitted the Mullins' statements.

### C.

Finally, Clark argues insufficient evidence existed to convict him of aiding and abetting Mullins. Clark asserts no physical evidence exists and Adams is not credible. We disagree.

In reviewing sufficiency of the evidence claims, we inquire "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). To be convicted of aiding and abetting, a defendant must "associate himself with the venture in a manner whereby he participates in it as something he wishes to bring about and seeks by his acts to make succeed." *United States v. Knox*, 839 F.2d 285, 294 (6th Cir. 1988), *cert. denied*, 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). The uncorroborated testimony of an accomplice alone may support a conviction. *United States v. Frost*, 914 F.2d 756, 762 (6th Cir.1990).

Here, Mullins repeatedly told Adams that Clark was assisting him on the robbery. The night before the robbery, Mullins and Clark met at Adams' house. The day of the robbery, they convened at Adams house both immediately before and after the robbery. Witnesses spotted a brown Firebird in the immediate vicinity of the bank just after the robbery, and Clark returned to Adams' house driving a brown Firebird. After the robbery, Clark and Mullins met privately in the bathroom with a black bag containing money from the robbery. After Clark returned to his hotel, Mullins told Adams although he obtained over $3000 during the robbery, he had only $1700 left. Examining the evidence in the light most favorable to the government, we find a rational jury could find Clark participated in the bank robbery and contributed to its success.

### III.

For the foregoing reasons, we **AFFIRM** Mullins' and Clark's convictions and the judgments of the Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky.