NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0126n.06
Filed: February 16, 2005
File Name: 05a0126n.06
Filed: February 16, 2006

No. 02-6112

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| **v.** | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **ROGER FUSSE,** | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant.* | ) | |
| | ) | |

BEFORE:    COLE and COOK, Circuit Judges; SPIEGEL, District Judge.[*]

**R. GUY COLE, JR.,** Circuit Judge.    Defendant-Appellant Roger Fusse appeals his

conviction of conspiracy to possess with intent to distribute 500 grams of cocaine.  The charges

alleged that Fusse—a mechanic who owns an autobody shop—extracted drugs that his alleged co-

conspirators had hidden in an automobile's engine during their journey across the Mexican border.

Fusse argues that: (1) the jury's verdict was against the weight of the evidence; and (2) that the

district court erroneously admitted hearsay statements.  He also seeks vacation of his sentence under

*Blakely v. Washington*, 542 U.S. __ (2004), on the ground that the Sentencing Guidelines violate the

---

[*] The Honorable S. Arthur Spiegel, United States District Court, Southern District of Ohio, sitting by designation.

Sixth Amendment. For the following reasons, we **AFFIRM** the conviction but **VACATE** and

**REMAND** for re-sentencing consistent with *United States v. Booker* 543 U.S.__ (2005).

## I. BACKGROUND

At trial, the following evidence was introduced. Stephen Brassel, Jeremy Hicks, and James

Poteete delivered a truck ("the Truck")—that contained cocaine hidden in its engine—to Fusse's

bodyshop ("the shop"). (Brassel, Hicks, and Poteete had been arrested on October 24, 2000. All

subsequently pled guilty to drug trafficking charges and testified against Fusse in the hopes of

receiving substantial downward departures from their otherwise mandatory sentences.) Although

Hicks did not remember whether he notified Fusse in advance that he was bringing the Truck to the

shop, he testified that there had been prior occasions in which he had shown up sans advance

warning. Hicks stated that he trusted Fusse: "He knew about what I was doing, what was going on,

and I couldn't just take something like that just anywhere." Brassel and Poteete testified that they

had no direct relationship with Fusse, and instead learned of the plan from Hicks.

Hicks testified that after he pulled into the shop, he told Fusse what was in the engine, and

that the two men agreed that Hicks would return the next morning to retrieve the cocaine. Hicks

further explained that he and Poteete returned to the shop on the morning of September 27 to retrieve

the cocaine. According to Hicks, Fusse gave him the four kilograms of cocaine that had been stored

in the engine. Poteete similarly testified that he saw Fusse hand Hicks the box, and, although he did

not pay attention to whether Fusse looked into it, Poteete testified that the box lacked a top.

Brassel testified that on September 28, 2000, he, Hicks, and Poteete picked up a trailer

containing furniture ("the Trailer") and took it to the shop. Brassel testified that although he and

Hicks pulled up to the shop, they never dropped off the Trailer because they discovered that local police were tailing them. Indeed, police officer Leon Taylor testified he had conducted surveillance of Brassel on that day. Taylor broke off surveillance when it appeared that Brassel and Hicks realized that they were being followed; the last place that Taylor saw them driving the Trailer was on the street of the shop.

FBI Agent Dan Kennedy testified that he visited Fusse's Nashville residence on February 21, 2001. According to Kennedy, Fusse initially denied having done any mechanic work for Hicks between September 26 and 28, 2000. When further pressed by Kennedy, Fusse admitted that Hicks had told him that the engine had been losing power, and that he (Fusse) did indeed work on it; according to Kennedy, Fusse stated that when he tore into the engine, he saw something inside of it that should not have been there and immediately summoned Hicks to the shop. Fusse told Kennedy that he was unsure what the mystery "thing" was, and that he did not bother to look at it and did not know what it looked like. Fusse then agreed to questioning by federal officials, but informed Kennedy that he needed "tonight to tell [his wife] what's going on because she doesn't know anything about this."

At trial, Fusse reiterated that although Hicks brought the Truck to the shop on September 26, Hicks did not ask him to remove any drugs, and instead asked him to fix the engine. Fusse testified that upon opening the hood, he saw an intake leak and spilled gasket sealer, but no drugs. When reinserting the intake gasket into the engine, Fusse testified, he saw something "that didn't look like . . . it should have been there . . . [i]t looked like a homemade plate over the bottom of the intake."

Fusse denied authorizing Hicks to bring either the Truck or the Trailer to the shop, and testified that he first learned that Hicks was a drug dealer after Hicks had been arrested.

## II.  ANALYSIS

Fusse raises two claims: (1) that the district court abused its discretion in denying his motion for a new trial; and (2) the district court erred in admitting Hicks's out-of-court statements regarding Fusse's participation in the conspiracy.

*A.*     *Motion for a New Trial*

Fusse first argues that the district court abused its discretion in denying his motion for a new trial.  Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  When presented with a Rule 33 motion—unlike a Rule 29 Motion for Judgment of Acquittal—the district court may weigh the evidence and assess the credibility of the witnesses; "[i]t has often been said that [it] sits as a thirteenth juror."  *United States v. Solorio*, 337 F.3d 580, 589 n.6 (6th Cir. 2003) (internal citations omitted).  However, when reviewing the district court's decision to deny said motion, we may only "determine whether the district court's determination that the evidence does not 'preponderate heavily against the verdict' is a clear and manifest abuse of discretion."  *Id.* (internal quotations and citations omitted).

We proceed to the merits of the claim.  The Government must demonstrate that Fusse knew of and voluntarily joined the conspiracy.  *See United States v. Avery*, 128 F.3d 966, 970 (6th Cir. 1997).  In our case, the testimony of Brassel, Hicks, and Poteete repeatedly provided that Fusse knew of and removed the cocaine in the engine.  Although Brassel and Poteete did not have direct

- 4 -

contact with Fusse, Hicks testified that he and Fusse explicitly agreed that Fusse would remove the drugs from the engine in exchange for two kilograms of cocaine, and that Fusse did indeed do so.

Fusse rests his defense on discrepancies about whether Fusse was actually present at the shop when the Truck arrived. He notes that Poteete testified—contrary to Hicks—that Fusse was not at the shop when the three men arrived with the Truck. This is slightly misleading: Poteete affirmatively volunteered only that he did not see Fusse, not that he was not there. The stronger form—"it is definitely a fact that [Hicks] did not go into the shop and talk with [Fusse] for a while"—was a mere affirmation of counsel's question. Moreover, the syntax of the question was a bit convoluted, and it is not unreasonable to conclude that Poteete did not fully grasp the question, particularly when his prior answer—which he put in his own words—suggested only that he did not see Fusse, not that Fusse was not there.

Similarly, Fusse notes that Brassel testified that he simply parked the Truck and got into the car with Poteete and Hicks, and that the three men then left the shop. This appears to diverge from the testimony of Hicks, who claimed that he was the one that parked the Truck, that he then got out and met with Fusse, and that he then drove off on his own. As to the discrepancy about meeting with Fusse, however, Brassel does not affirmatively state that Hicks did not meet with Fusse; it is possible that he omitted it from his brief summary of the events, especially given that he did not witness the meeting between Hicks and Fusse. As for the discrepancy about who drove home and in what order, that is ultimately a minor detail about events that occurred over a year before the trial testimony. Reviewed under the standard of clear and manifest abuse of discretion, these inconsistencies do not negate the entirety of the testimony from Hicks and Brassel.

Even if Fusse was absent from the shop when the Truck was dropped off, "[a] conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991). Here, the fact that Hicks and Poteete both testified that on September 27, 2000, they returned to the shop, and that Fusse gave Hicks a box containing cocaine (the day after the three men had dropped the Truck off at the shop) suggests that there was indeed an agreement between Fusse and the others. It is highly unlikely that Fusse was simply returning his customers' narcotics out of courtesy.

Moreover, there was evidence other than the testimony of the co-conspirators that tied Fusse to the drugs. For one, the mere fact that Hicks felt secure leaving the Truck at Fusse's shop and asking Fusse to look inside the engine indicates that Fusse already knew what was going on: it is unlikely that drug traffickers would risk exposing their merchandise to a non-participant. Officer Taylor also testified that on September 28, 2000, he followed Brassel and Hicks—who were this time transporting the Trailer—to a destination near the location of the shop. Finally, the statement made by Fusse to Kennedy on February 21, 2001—that he needed to tell his wife "what's going on because she doesn't know anything about this"—suggests consciousness of guilt.

B.      *Hearsay*

Fusse also contends that the district court erred in admitting Brassel's testimony about out-of-court statements made by Hicks in which he told Brassel that Fusse had agreed to and was helping him to remove the cocaine from the engine. The Government argues that the statements were not offered for the truth of the matter, but instead were offered to explain why Brassel did what he did on the day in question—that is, to explain why he felt comfortable leaving the Truck at the

shop.  However, the district court provided no limiting instruction to the jury admonishing them to consider the statements only for their effect on Brassel's state of mind.  Thus, even if the statements could have been admitted for a more limited purpose, the lack of instruction to the jury meant that the statements in fact were admitted for a much broader purpose.

In any event, the Government argues that the statements fell within the exception for co-conspirator hearsay.  Federal Rule of Evidence 801(d)(2)(E) excepts from the definition of hearsay "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." To take advantage of this exception, the Government must demonstrate that: (1) there was a conspiracy; (2) the defendant was a member of the conspiracy; and (3) the statement was made during and in furtherance of the conspiracy.  *United States v. Clark*, 18 F.3d 1337, 1341 (6th Cir. 1994).  Although the hearsay itself may be used to determine whether the defendant was involved in the conspiracy, "absent *some* independent, corroborating evidence of defendant's knowledge of and participation in the conspiracy, the out-of-court statements remain inadmissible." *Id.* at 1341-42 (emphasis in original).

Fusse contends that at the time Brassel testified about the out-of-court statements made by Hicks that implicated Fusse, there had been no independent evidence that Fusse was indeed a member of any conspiracy.  This is correct: the only prior witness was Agent Kennedy, who also did not have any firsthand knowledge of an agreement between Hicks and Fusse.  Moreover, Brassel himself did not deal directly with Fusse or have any independent knowledge of Fusse's involvement; he was only told of Fusse's involvement by Hicks.  At the time that the co-conspirator hearsay was admitted, then, there was no independent evidence that Fusse was involved in the conspiracy.

That does not end the matter, however. A district court "may admit the statements in question subject to a later ruling that this burden was met." *United States v. Emuegbunam*, 268 F.3d 377, 395 (6th Cir. 2001). In other words, the statements may be admissible if sufficient independent evidence of the defendant's participation in the conspiracy comes in after the statements. This independent evidence came from the horse's mouth: Hicks later testified to his direct agreement with Fusse. Moreover, Poteete also testified that he observed, on September 27, 2000, Fusse giving the box of cocaine to Hicks. Thus, there was direct nonhearsay evidence of Fusse's involvement in the conspiracy, rendering the out-of-court statements admissible.

One final note. When it first admitted the statements (during Brassel's testimony), the district court did not state that their admission was contingent on independent evidence of Fusse's involvement in the conspiracy, and the district court never made the finding that the condition had later been fulfilled. In other words, the district court erroneously thought that the hearsay was unconditionally admissible at the time of Brassel's testimony. The district court's error turned out to be harmless, however, because the direct evidence that later came in through Hicks satisfied the conditions that the district court should have placed on the statements' admission.

C.      *Sentence*

Pursuant to the Supreme Court's recent pronouncement in *United States v. Booker*, 543 U.S. __ (2005), Fusse is entitled to a re-sentencing. In *Booker*, the Supreme Court held that under the Sixth Amendment, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*,

543 U.S. __, slip op. at 20 (Stevens, J. for the Court). In this case, Fusse's base offense level was calculated using determinations of the quantities of drugs implicated by his conduct – findings that were made by a judge, not a jury. The judge determined that Fusse was accountable for four kilograms of cocaine. The jury found Fusse guilty of conspiracy to possess with intent to distribute over 500 grams of cocaine.

However, because Fusse did not raise this argument below, we may reverse his sentence only if the district court committed plain error. *United States v. Oliver*, __F.3d__ (6th Cir. 2005), slip op. at 6. Fusse satisfies the plain error test as set forth by *United States v. Olano*, 507 U.S. 725, 735 (1993). Here, the district court erred in applying the sentencing guidelines as mandatory, the error is "plain" at this time, the error affects substantial rights because Fusse arguably received a higher sentence as a result, and an error that leads to a Sixth Amendment violation seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Oliver*, __F.3d__, slip op. at 6-8; *United States v. Hines*, __F.3d __ (6th Cir. 2005), slip op. at 14-17. Consequently, we must remand the case to the district court for re-sentencing consistent with the Supreme Court's decision in *Booker*.

### III. CONCLUSION

For the preceding reasons, we **AFFIRM** the conviction and **VACATE** and **REMAND** Fusse's sentence for proceedings consistent with this opinion and *United States v. Booker*.