# Supreme Court of Kentucky

FINAL

2005-SC-000312-MR
2005-SC-000745-TG

DATE 2-14-08 ElizGraurt D.C.

VICKI MONROE                                                      APPELLANT

V.
ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE STEPHEN K. MERSHON, JUDGE
NO. 02-CR-001367-002

COMMONWEALTH OF KENTUCKY                                          APPELLEE

**OPINION OF THE COURT BY JUSTICE NOBLE**

<u>REVERSING</u>

This case is on appeal from the Jefferson Circuit Court where Appellant, Vicki

Monroe and her son, Leslie Emerson, were convicted of robbery and the murder of

Monroe's husband. Emerson was also convicted of tampering with physical evidence.

Appellant raises ten claims of error: (1) that the trial court allowed impermissible

hearsay; (2) that she was denied her right to confrontation when the trial court allowed

the introduction of Emerson's taped statements; (3) that she was denied her right to

confrontation when the trial court allowed the introduction of phone records of Appellant

and Emerson; (4) that she was denied her right to confrontation when the trial court

refused to redact hearsay statements made by officers in her taped statements before

they were played in open court; (5) that Appellant's motion to suppress her statements

was improperly overruled; (6) that the jury selection process in Jefferson County failed to comply with proper administrative procedures; (7) that the trial court improperly refused to instruct the jury on facilitation; (8) that the trial court erred by allowing the Commonwealth to call a witness without prior notice to Appellant; (9) that she was denied due process by the refusal of the trial judge to recuse from the case; and (10) that the trial court improperly admitted evidence of prior bad acts.

Finding error in the admission of impermissible hearsay, this court reverses the verdict of the trial court. Issues 2, 3, 4, 8, 9 and 10 have not been addressed as they are unlikely to reoccur on retrial or are without merit. All other issues are addressed accordingly.

## I. Background

Appellant's convictions arose from charges brought against her for murder and complicity to commit robbery in the first degree of her husband, Gerald Monroe. Her son, Emerson, was convicted of murder, robbery, and tampering with evidence. Appellant now appeals to this Court as a matter of right. Ky. Const. §110(2)(b).

Appellant and husband, Gerald Monroe, owned and operated a tavern. On June 1, 2002, Appellant discovered Monroe's body in the tavern. Testimony indicated that prior to Mr. Monroe's murder, Appellant often confided in Emerson about how unhappy she was and how badly her husband treated her.

According to the record, about a year before the murder when Appellant was complaining about her husband, Emerson told her there were things that could be done to get rid of him. She asked how much it would cost and Emerson told her $5,000. She claimed that she did give Emerson $2,000 about that time, but believed he planned on using the money for bills. Emerson did in fact spend the money on bills.

2

This topic was not mentioned again until months later when Appellant had another argument with her husband, and commented to Emerson that she thought she wasn't going to have to go through this anymore. About two months prior to the murder, she claims she gave Emerson another $1,000 to catch up on his bills, but nothing was mentioned about killing Gerald Monroe. Emerson told others that Appellant had pressured him to find someone to kill Mr. Monroe, and admitted that he used the money Appellant gave him to pay bills. However, because he could not pay her back, he felt he had to "take care of this for her."

Prior to trial, Appellant filed a motion to suppress statements she had given to police, arguing that the burden was on the Commonwealth to prove the statements were voluntary. A hearing was held on this motion. The trial court found no grounds for suppression of the statements. After a mistrial, Appellant refiled the motion to suppress and it was again denied.

Appellant also filed a motion for the judge to recuse. The first motion was made in response to comments the judge allegedly made to jurors after the mistrial of Appellant's first trial and for allegedly encouraging the defendant to accept a plea offer. It was denied on the record with the judge noting that he did talk to jurors after trials if they have questions about the proceedings, but that he never expressed an opinion on how they should rule. In the case of a mistrial, he thanked them for their work and told them that it is okay not to have reached a verdict. The motion to recuse was denied because the judge did not see any bias in his statements to the jurors or for encouraging resolution of the proceedings. Appellant filed a second motion for recusal which was also denied.

Prior to trial, Appellant also moved to prohibit the use of hearsay statements made by Emerson to Jeffrey Rawlings, Justin Crews and Amanda Decker. The court, at the time of the hearing, had heard the evidence in the case twice and noted by a preponderance of the evidence that there was a conspiracy. The Commonwealth then went through each statement it sought to introduce and argued that each statement was made in furtherance of the conspiracy. The trial court found that the statements were non-testimonial and that there was corroboration. The court noted that while there must be a finding that the statements be in furtherance of a conspiracy, the case law has liberally defined that requirement and thus the proffered statements were admissible. Appellant also made motions to preclude the Commonwealth from introducing phone records of Appellant and Emerson and to preclude hearsay from being admitted during the playing of her taped statements. These motions were denied.

Prior to Appellant's trial, she moved to discharge the jury panel because the procedure employed in the jury selection process in Jefferson Circuit Court purportedly did not comply with the Administrative Procedures for the Court of Justice, Part II, Section 6(2). A hearing was held and the trial court determined that the selection process was in substantial compliance with applicable law and denied the motion to discharge the jury.

During the presentation of evidence, the jury heard from Jeffrey Rawlings, Justin Crews, and Amanda Decker who testified about the statements made to them by Emerson. Emerson invoked his Fifth Amendment right against self-incrimination and did not testify at Appellant's trial.

4

The jury was instructed on the charges in accordance with the evidence. The court denied Appellant's request for an instruction on the lesser offense of facilitation. Appellant was found guilty of complicity to commit murder and was sentenced to life.

## II. Analysis

### A. Motion to Suppress Statements

At midnight on June 12, 2002, two members of the Jefferson Co. Police Department arrived at Appellant's home and asked if she would come to headquarters with them. She agreed, and was interviewed for a few hours, in several small sessions. She was told that her son was being questioned simultaneously. She was not read her rights at this time. Subsequent to the last taped session, Appellant was confronted with her son's accusations and made some incriminating statements. Appellant was then arrested and read her Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant filed a motion to suppress the statements she made to police based on the fact she was not read her rights until the end of questioning.

The police are required to advise a person of her Miranda rights "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994); see also Watkins v. Commonwealth, 105 S.W.3d 449, 451 (Ky. 2003). In determining whether a person is in custody, the court "must examine all of the circumstances surrounding the interrogation," but the "relevant inquiry is how a reasonable man in the suspect's position would have understood the situation." Stansbury, 511 U.S. at 322, 114 S.Ct. at 1529, 128 L.Ed.2d 293.

Appellant came to the detective's office voluntarily. While she was there, she was not monitored. When Appellant was not being interviewed, she was allowed to

5

smoke, drink and eat. She was left alone in the office. During the course of the interview, she never asked to be taken home. Detective Davis testified that at no time did Appellant indicate that she did not want to talk. She was allowed to use the restroom and returned to the office on her own. It would not have been reasonable, considering these circumstances, for Appellant to believe that she was in custody.

Appellant also alleges that Detective Davis's interrogation violated Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). There, the interrogating officer "made a conscious decision to withhold Miranda warnings, thus resorting to an interrogation technique that he had been taught: question first, then give the warnings, and then repeat the question 'until I get an answer that she's already provided once.'" Id. at 600, 124 S.Ct. at 2606, 159 L.Ed.2d 43. The Court found that post-Miranda statements obtained using this technique are invalid only where police deliberately employ the technique to circumvent the suspect's Miranda rights.

However, Appellant's argument fails for the simple reason that Miranda rights only pertain to custodial interrogation. Stansbury, 511 U.S. at 322, 114 S. Ct. at 1528, 128 L. Ed. 2d 293 (1994). Having established that Appellant was not in custody until she confessed involvement in the murder, there was no Seibert violation.

## B. Jury Selection Procedure

Appellant alleges that the procedure employed by the Jefferson County courts in summoning prospective jurors constitutes a substantial deviation from the procedures set forth in the Administrative Procedures for the Court of Justice and in KRS 29A. Appellant initially complained that the Jefferson County court did not require that the juror qualification form be returned within 10 days and that those failing to return the form be personally served by the sheriff. However, the applicable rule states that the

6

form may also be returned "at such other times as may be specified in the summons." See Administrative Procedures for the Court of Justice, Part II, Section 6(2). The jurors in this case were instructed to bring the qualification form with them on the day they reported. The procedure for return of the form was in compliance with the rule.

This Court has made it clear that it will not consider minor errors in jury selection reversible unless some prejudice is demonstrated. Robertson v. Commonwealth, 597 S.W.2d 864 (Ky. 1980). The question then is whether the failure to have the jurors who failed to respond to the summons personally served by the sheriff is a substantial deviation from the proper administrative procedure.

Under KRS 29A.060(4), personal service is permissive. It is mandatory under Administrative Procedures for the Court of Justice, Part II, Section 6(2). The concern under either procedure, however, is to ensure that the court has enough jurors present to conduct the business of the court. In this case, 700 summons were sent in order to obtain at least 120 prospective jurors. Had there been an insufficient number of jurors, the court could have ordered service under Administrative Procedures for the Court of Justice, Part II, Section 7(4). There was a sufficient number of jurors and the randomness of the jury pool was unaffected. There was no prejudice to Appellant. Therefore, under Robertson, this Court finds no error.

### C. Facilitation Instruction

Appellant argues that the jury should have received an instruction on facilitation. KRE 506.080 provides that a person is guilty of criminal facilitation when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime. The

7

primary difference between facilitation and complicity is the state of mind; complicity requires the complicitor to "intend that the crime take place." <u>Webb v. Commonwealth</u>, 904 S.W.2d 226, 228 (Ky. 1995). Perhaps a clearer statement is that a complicitor must be an instigator, or otherwise invested in the crime, while a facilitator need only be a knowing, cooperative bystander with no stake in the crime.

Prior to the giving of an instruction, however, there must be evidence to support it. <u>Thompkins v. Commonwealth</u>, 54 S.W.3d 147 (Ky. 2001). In this case, facilitation would require Appellant providing money to Emerson, knowing that he would use it to commit the crime, but without intention to promote the crime itself. Appellant was not entitled to the facilitation instruction because no reasonable juror could conclude that Appellant was involved and had knowledge, but was indifferent to whether Emerson committed the murder. There is no evidence to support that contention and Appellant was not entitled to the instruction.

### D. Hearsay Statements

The Commonwealth sought to introduce certain statements made by Emerson under KRE 801(a)(b)(5) as statements of a co-conspirator made during the course of, and in furtherance of, the conspiracy to murder Gerald Monroe for the purpose of profit. The statements the Commonwealth sought to have admitted were as follows, verbatim:

**<u>Statements made by Emerson to Jeffrey Rawlings</u>**

1. His mother wanted him to take care of Jerry and have him pretty much killed.
2. He told me Vicki had said that she would pay somebody to do it and she wanted him to find somebody.
3. She was just pressuring him to find somebody to do something to Jerry.
4. She wants me to do it before I go to Florida.

**<u>Statements made by Emerson to Justin Crews</u>**

1. About 2 months after Jerry was killed, Emerson told Crews that Vicki wanted Emerson to kill him.

8

2. He said he had to kill Jerry.
3. Vicki had been on Leslie (Emerson) pretty hard about killing Jerry.
4. Leslie told him after phone conversations with Vicki that she won't get off my back, she is trying to get me to do it now.
5. Leslie (Emerson) asked Justin if he knew how to make a silencer.

**Statements made by Emerson to Amanda Crews Decker**

1. His mom wanted somebody to kill Jerry for her.
2. She said that she was going to give him like $5,000 but she is not sure of the dollar figure.
3. He bought the gun to kill Jerry.
4. She would call and cry to him and say that Jerry made her look like an ass in front of people and stuff like that.

KRE 801(a)(b)(5) provides that "a statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is...a statement by a co-conspirator of a party during the course and in furtherance of a conspiracy." In order to fall within this exception, the proponent of the statement must show (1) a conspiracy existed, (2) the conspiracy involved the defendant, and (3) the statement was made in furtherance of the conspiracy. Gerlaugh v. Commonwealth, 156 S.W.3d 747, 752 (Ky. 2005); Marshall v. Commonwealth, 60 S.W.3d 513, 520 (Ky. 2001). The government must establish these three prongs by a preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). The trial judge must make the findings of fact necessary to determine whether these statements may be admitted. KRE 104(a).

Defense counsel maintains that the Commonwealth has not proven a conspiracy, and alternatively, that the statements were not made "in furtherance" of a conspiracy. "A conspiracy begins...as soon as an agreement is reached to commit a crime." Robert G. Lawson, The Kentucky Evidence Law Handbook § 8.30[3] at 608 (4th ed. 2003). By her own admission, Appellant asked Emerson what it would cost to get rid of her husband and gave him $2,000. Appellant claimed that she thought he would use that

9

money to pay bills, and Emerson did in fact use it for that purpose. However, taken with the other evidence of her financial affairs and a sudden spike in calls to Emerson a month or so before the murder, there was sufficient evidence for the trial court to believe by a preponderance of the evidence that a conspiracy existed. It has long been the case that the statements of a defendant may be used to establish the fact of a conspiracy provided there is additional evidence supporting the theory. See Commonwealth v. King, 950 S.W.2d 807 (Ky. 1997). In this case, the trial court had a sufficient basis to find that a conspiracy between Monroe and Emerson was established according to the appropriate standard. The remaining question is whether the statements sought to be introduced were made in furtherance of a conspiracy.

As this Court noted in Gerlaugh, 156 S.W.3d 747, one of the objectives of the drafters of the Kentucky Rules of Evidence was to achieve uniformity with federal rules to the extent possible and to depart only for good reasons. Federal courts have specified what will not be considered under the co-conspirator exception: "nothing more than casual conversation," United States v. Lieberman, 637 F.2d 95, 102 (2d Cir. 1980), "idle conversation," United States v. Urbanik, 801 F.2d 692, 696 (4th Cir. 1986), and "mere idle chatter." United States v. Cornett, 195 F.3d 776, 781 (5th Cir. 1999). However, even with these specifications, the federal courts have been generous in finding compliance with the furtherance requirement. See United States v. Paone, 782 F.2d 386 (3d Cir. 1976) (not a stringent requirement); United States v. Gjerde, 110 F.3d 595 (8th Cir. 1997) (broadly construed); United States v. Johnson, 200 F.3d 529 (7th Cir. 2000) (some reasonable basis for finding furtherance).

The Commonwealth relies on the reasoning in United States v. Clark, 18 F.3d 1337 (6th Cir. 1994) to support the proposition that the statements were properly

10

admitted. In <u>Clark</u>, <u>citing</u> <u>U.S. v. Hitow</u>, 889 F.2d 1573 (6th Cir. 1989), it was noted that statements which identify the participants and their roles in the conspiracy are made "in furtherance" of a conspiracy. <u>Clark</u> at 1342. Certainly, most of the admitted statements did identify Appellant or Emerson, her alleged co-conspirator. However, this Court finds this interpretation of KRE 801(a)(b)(5) far too broad. The plain language of the rule requires not only that the statement be made during and about the conspiracy, but adds the conjunctive "AND in furtherance of the conspiracy" (Emphasis added.) The determining factor is whether a statement in any way assists or advances the objectives of the conspiracy. The federal view that "furtherance" should be interpreted broadly does a disservice to the word, and is not what was intended by the drafters. As pointed out above, other federal courts have held that casual comments or statements made to a confidant are not within the conspiracy exception, and the <u>Clark</u> case of 1994 departs from that reasoning.

The concept of "assists or advances" is nicely illustrated by an old pre-Rules case in which the plaintiffs proved the existence of a criminal conspiracy in an action to set aside an election, by offering statements made asking that the room selected to receive the ballots be left unlocked and unattended after the election. <u>Ottley v. Herriford</u>, 161 Ky. 7, 170 S.W. 205 (1914). Clearly, these statements assisted in the objectives of the conspiracy. Asking that the rooms be left unlocked pushed the conspiracy forward in a way that casual conversation does not. To illustrate further, the danger in too broadly interpreting "furtherance" is demonstrated by what followed the admission of these statements in this case.

Once these statements were admitted, defense counsel then invoked KRE 806 to offer statements that Emerson had made to police officers which served to impeach

11

the hearsay statements, which in turn led to the Commonwealth arguing that the door had been opened to play the entirety of Emerson's three statements made to police that had been recorded. Emerson was unavailable as a witness, having invoked his Fifth Amendment right not to incriminate himself. (That he had this right at this point was debatable as he had been convicted in his own trial, but this was not raised.) The defense argued that the entire statements should not be permitted pursuant to Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004). The trial court concluded that the rule of entirety of the evidence and fundamental fairness required that the Commonwealth be allowed to attack the impeachment, and allowed the statements to be played to the jury in their entirety.

Had the impermissible hearsay not been admitted, this chain of events would not have occurred, and large amounts of otherwise impermissible evidence would not have tainted the trial. It is tempting to say that the hearsay statements were merely cumulative to statements placed before the jury by the defendant and Emerson's own statements. However, the error of admitting impermissible hearsay under the conspiracy exception cannot be made harmless by the use of otherwise impermissible evidence it caused to be admitted, i.e. Emerson's three taped statements.

Viewing the statements admitted through this lens, this Court must conclude that almost all of the statements were hearsay and that the Commonwealth failed to provide a proper exception that would have allowed them to be admitted. Only three of the thirteen statements have other grounds of admissibility: the statement from Emerson to Justin Crews asking if he knew how to make a silencer met the co-conspirator exception; the statement from Emerson to Amanda Decker saying that he bought the

12

gun to kill Jerry was a statement against his penal interest, and also possibly the statement to Jeffrey Rawlings that Appellant wanted him to find somebody to kill Jerry.

The other ten statements are nothing more than Emerson confiding in his friends or casual comments, and the admission of these statements was clear error. They certainly create a reasonable probability that they affected the verdict given their weight and the line of impermissible evidence they caused to follow. There can be no doubt that the testimony of a son against his mother carries substantial weight. Thus these hearsay statements cannot be harmless.

### III. Conclusion

For the reasons set forth herein, the judgment of the Jefferson Circuit Court is reversed and remanded for a new trial.

All sitting. Lambert, C.J.; Abramson, Cunningham and Schroder, JJ., concur. Scott, J., concurs in part and dissents in part by separate opinion in which Minton, J., joins.

COUNSEL FOR APPELLANT:

Shannon Dupree
Assistant Public Advocate
Department of Public Advocacy
Suite 301, 100 Fair Oaks Lane
Frankfort, Kentucky  40601


COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General

Gregory C. Fuchs
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, Kentucky  40601-8204

# Supreme Court of Kentucky

2005-SC-000312-MR
2005-SC-000745-TG

VICKI MONROE                                                                    APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.                HONORABLE STEPHEN K. MERSHON, JUDGE
NO. 02-CR-001367-002

COMMONWEALTH OF KENTUCKY                                      APPELLEE

**OPINION BY JUSTICE SCOTT CONCURRING IN PART
AND DISSENTING IN PART**

I respectfully dissent on the issue of whether Leslie Emerson's statements were *in furtherance of* the conspiracy to murder Appellant, Vicki Monroe's, husband. In my opinion, the trial court properly admitted those statements under KRE 801A(b)(5),[1] commonly known as the coconspirator exception to the hearsay rule. I would therefore affirm Appellant's conviction for complicity to commit murder.

We should take guidance from federal case law in determining whether a particular statement was made in furtherance of the conspiratorial objective. This Court recently noted that "[o]ne of the objectives of the drafters of the Kentucky

---

[1] KRE 801A(b)(5) provides that "[a] statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is ... [a] statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

Rules of Evidence was to achieve uniformity with the Federal Rules of Evidence (FRE) to the extent possible and to depart from the Federal Rules only for good reason." Gerlaugh v. Commonwealth, 156 S.W.3d 747, 753 (Ky. 2005). Federal courts adopt a broad construction of this furtherance requirement. United States v. Magee, 821 F.2d 234, 244 (5th Cir. 1987) ("The phrase 'in furtherance of the conspiracy' must not be applied too strictly or the purpose of the coconspirator exception will be defeated."); United States v. Bentley, 706 F.2d 1498, 1506 (8th Cir. 1983) (observing that the furtherance requirement is "afforded a broad construction").

In accordance with this broad interpretation, federal courts hold that statements which identify the participants and their roles in the conspiracy are made in furtherance of that conspiracy. United States v. Clark, 18 F.3d 1337, 1342 (6th Cir. 1994) (codefendant's out of court statements to girlfriend that defendant helped him in the bank robbery and "didn't have the stomach for it" were in furtherance of the conspiracy, where statements clearly identified codefendant as a participant and commented on codefendant's inadequate performance of his role); Magee, 821 F.2d at 244 (hearsay statement of coconspirator that defendant was the primary buyer of marijuana was made in furtherance of the conspiracy); United States v. Handy, 668 F.2d 407, 408 (8th Cir. 1982) (in prosecution for mail fraud and conspiracy in connection with murder to collect proceeds of life insurance policy, statements of coconspirator that defendant would help him in the scheme and statement following murder indicating that defendant had driven car the day of the killing were made in furtherance of the conspiracy). Emerson's statements indicate that Appellant

agreed to pay him to kill her husband. Thus, these statements clearly identified Appellant and Emerson as participants in the conspiracy. Therefore, consistent with our previous pronouncement in <u>Gerlaugh</u>, and that of the federal courts, the trial court did not abuse its discretion in admitting the statements under KRE 801A(b)(5).

Minton, J., joins this concurring in part and dissenting in part opinion.