**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0066n.06
Filed: January 29, 2009

**No. 06-5033**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

     **Plaintiff-Appellee,**

v.

                                      **ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE**

KACY HENDERSON,                **EASTERN DISTRICT OF TENNESSEE**

     **Defendant-Appellant.**

_____/

**BEFORE:     SILER, CLAY and COOK, Circuit Judges.**

**CLAY, Circuit Judge.** Defendant-Appellant, Kacy Henderson, appeals his conviction and sentence for conspiracy with intent to distribute 500 grams or more of cocaine in violation of 18 U.S.C. §§ 841 and 846, entered by the United States District Court for the Eastern District of Tennessee. Specifically, Henderson appeals (1) the district court's admission of out-of-court statements under the coconspirator exception of the Federal Rules of Evidence; (2) the district court's failure to charge the jury regarding corroboration of post-arrest statements to police; (3) the district court's determination regarding the drug quantity attributable to him; (4) the district court's denial of an offense level reduction for acceptance of responsibility; (5) the district court's denial of a "mitigating role" reduction; and (6) the district court's rejection of a "safety valve" adjustment to his sentence. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## BACKGROUND

**I.     Factual Background**

In 2001, the Chattanooga Police Department began investigating Defendant, Kacy Henderson ("Henderson"), after a tip from a confidential informant by the name of George Jones ("Jones"). Police arrested Jones on November 5, 2000 for possession of crack cocaine. In exchange for favorable consideration at sentencing, Jones began cooperating with police and disclosed that he purchased the drugs found in his possession from Henderson. As part of his effort to cooperate, Jones enlisted the help of his former girlfriend, Stephanie Garner ("Garner"), to act as a confidential informant on his behalf.

Garner later met Henderson at a local K-Mart after being introduced by a mutual acquaintance. Thereafter, the two began to spend time together socially. On one occasion, Garner told Henderson that she "need[ed] some help as far as getting some drugs to make some money . . . ." (Joint Appendix ("J.A.") at 229.) Although initially hesitant, Henderson agreed to help. On May 2, 2002, the two met at a Waffle House and made arrangements for Garner to purchase two ounces of powder cocaine and two ounces of crack cocaine from Henderson. Garner recorded the latter conversation and turned the evidence over to Narcotics Detective Lee Wolff ("Detective Wolff") of the Chattanooga Police Department.

On May 3, 2002, Chattanooga Police arranged a "buy and bust," wherein Garner purported to purchase cocaine from Henderson. During the transaction, police intervened and Henderson was detained by Detective Wolff. Police found 170 grams of cocaine in Henderson's possession.

Thereafter, Henderson accompanied police to his apartment where they conducted a search, finding digital scales, small plastic bags, a gun and approximately $946.00 in cash.

After the search of his apartment, Henderson was transported to the Police Services Center for questioning by Wolff and another Detective, Phillip Narramore ("Detective Narramore"). During questioning, Detective Narramore inquired regarding Henderson's relationship with Myron "Flush" Baker ("Baker"), a drug dealer whom police had been investigating since the 1990s. According to police, Henderson agreed to cooperate and admitted that he traveled to Atlanta with Baker on several occasions to purchase cocaine. Henderson told police that he would often give money to Baker to purchase cocaine and the two would later divide the proceeds. Henderson told the Detectives that the most he ever received was one half of a kilogram, while Baker would obtain between one and three kilograms of cocaine. Henderson stated that he had never met Baker's source but had seen him on one of their excursions to Atlanta.

Based on his statements, the police did not arrest Henderson but instead released him so that he could obtain further information regarding Baker. After Henderson's release, Detective Narramore prepared a written summary of Henderson's statements. Over a period of two months, Henderson met with detectives on several occasions, each time providing updates regarding his activity with Baker. These conversations were also reduced to written summaries by detectives.

## II.     Procedural Background

On July 8, 2003, a grand jury sitting in the Eastern District of Tennessee handed down a three count indictment charging Henderson with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, possession with intent to distribute cocaine in violation of 21 U.S.C.

§ 841(a), and possession of a firearm after being convicted of a misdemeanor domestic violence offense in violation of 18 U.S.C. § 922(g)(9). On April 27, 2004, Henderson was arrested and charged with the offenses enumerated in the indictment. On January 25, 2005, the government obtained a Superseding Indictment, charging Henderson with an additional count of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

### A. Guilty Pleas

On March 3, 2005, Henderson appeared before the district court and attempted to plead guilty to conspiracy to possess cocaine with intent to distribute, pursuant to a plea agreement reached with the government. During the hearing, Henderson, through counsel, argued that notwithstanding his entry of a guilty plea, the factual basis of the plea agreement overstated his involvement with the conspiracy. Thereafter, the district court rejected Henderson's guilty plea, noting that the factual basis of the plea agreement did not support the conspiracy charge.

On April 21, 2005, Henderson pleaded guilty to Count Three of the Superseding Indictment, which alleged possession of cocaine with intent to distribute. Henderson, however, proceeded to trial on the remaining counts of the Superseding Indictment.

### B. Suppression Hearing

Prior to trial, Henderson filed a motion to suppress his statement to Detectives Wolff and Narramore following his May 3, 2002 arrest. Henderson alleged that he was not properly Mirandized and that his statement to police was coerced. During the suppression hearing, Henderson took the stand on his own behalf. Henderson testified that he was not read his *Miranda* rights by police nor did he make any statements indicating that he went to Atlanta with Baker for the purpose

4

of purchasing drugs. Henderson testified that the Detectives threatened him, stating that he would be subject to a federal charge if he did not cooperate. Henderson further testified that he met Baker only after he began cooperating with police. After additional testimony by Detectives Wolff and Narramore, the district court denied Henderson's motion to suppress evidence.

## C. Trial

On April 27, 2005, Henderson proceeded to trial on the charges of conspiracy to possess cocaine with intent to distribute and distribution of crack cocaine. During the trial, the government called Detectives Wolff and Narramore to testify regarding their interactions with Henderson, the details surrounding his arrest on March 3, 2002 and subsequent statements made to police.

The government also called individuals to testify regarding Henderson's drug transactions, including Jones, Garner and an informant, Seneca Sandridge ("Sandridge"). Sandridge testified that he obtained powder cocaine from an individual named Freddie Hamrick ("Hamrick"). Sandridge testified that Hamrick lived across the street and that he frequently saw Henderson visiting Hamrick's apartment. Sandridge testified that Hamrick told him that Henderson was Hamrick's cocaine source and that Henderson obtained his drugs from someone in Georgia. Over Henderson's objections, the district court admitted Sandridge's testimony regarding Hamrick's statements under the coconspirator hearsay exception of the Federal Rules of Evidence. Sandridge also described an occasion in which he purchased nine ounces of cocaine from Henderson.

After closing arguments, Henderson requested a special jury instruction regarding the credibility of Henderson's post-arrest statement to police and the need for corroborating evidence regarding the essential facts admitted by Henderson in the statement. The district court denied

Henderson's request regarding the special jury instruction, noting that "this is not a case where the sole evidence, or even the primary evidence against the defendant is the confession." (J.A. at 303-04.)

The jury ultimately found Henderson guilty of conspiracy to possess cocaine with intent to distribute, but found that the government did not prove that Henderson conspired to distribute at least five kilograms of cocaine. The jury did, however, find that the government met its burden with respect to proving that the conspiracy involved at least 500 grams of cocaine. The jury acquitted Henderson of possession of cocaine with intent to distribute.

**D.      Sentencing**

On November 16, 2005, the district court commenced Henderson's sentencing hearing and heard objections regarding the recommendations made in Henderson's Presentence Report ("PSR"). Henderson's PSR recommended a base offense level of 32 after attributing five kilograms of cocaine to Henderson. The PSR also recommended a sentencing enhancement for obstruction of justice as a result of Henderson's testimony at the suppression hearing. Additionally, the PSR recommended against the application of an adjustment to Henderson's sentence for acceptance of responsibility. Further, the PSR recommended against the application of the "safety valve" provision of the Sentencing Guidelines, which would have permitted the district court to sentence Henderson below the statutory minimum for his offense.

After hearing argument from counsel, the district court concluded that five kilograms of cocaine was attributable to Henderson after crediting the testimony of Detective Narramore regarding the quantity of cocaine involved in the conspiracy. At a later hearing, the district court found that

there was insufficient evidence to support an enhancement for obstruction of justice. The district court also concluded that the acceptance of responsibility and safety valve adjustments did not apply to Henderson. Moreover, the district court declined Henderson's request for a "minor role" adjustment. Henderson was ultimately sentenced to 121 months of imprisonment and four years of supervised release. Henderson now timely appeals.

## DISCUSSION

### I. Admission of Coconspirator Statements

#### A. Standard of Review

"In reviewing a trial court's evidentiary determinations, this court reviews *de novo* the court's conclusions of law, e.g., the decision that certain evidence constitutes hearsay, and reviews for clear error the court's factual determinations that underpin its legal conclusions. " *United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006) (quoting *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005)). This Court has noted that "[t]his standard is consistent with the Supreme Court's admonition in *General Electric Co. v. Joiner*, 522 U.S.136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), that we review evidentiary determinations for abuse of discretion, because it is an abuse of discretion to make errors of law or clear errors of factual determination." *Payne*, 437 F.3d at 554.

#### B. Analysis

Henderson alleges that the district court erroneously admitted out-of-court statements made by Hamrick under the coconspirator exception of the Federal Rules of Evidence. Henderson contends that the government did not meet its burden with respect to the foundational prerequisites for the admission of out-of-court statements under the coconspirator exception. We disagree.

7

## 1. Disputed Out-of-Court Statements

As part of its case in chief, the government called Sandridge to testify regarding the conspiracy alleged in Count One of the Superseding Indictment. Sandridge's testimony centered around his interactions with his cocaine supplier, Hamrick. Sandridge testified that from 2000 to 2002, he purchased cocaine from Hamrick, a drug dealer who lived across the street, "at least once or twice a week." (J.A. at 243, 252.) Additionally, Sandridge testified regarding a number of statements allegedly made by Hamrick regarding his cocaine source:

> Q: Okay. And where was Freddie getting his drugs from; do you know?
> A: From Kacy.
> Q: And how do you know that?
> A: Fred Hamrick told me.
> ***
> Q: Do you know how long Freddie Hamrick had been getting cocaine from Mr. Henderson?
> A: Ever since I was coping [sic] from him.
> Q: And do you know when that was?
> A: From 2000 to 2002.
> Q: Okay. And did Mr. Hamrick ever tell you where Mr. Henderson was getting his cocaine?
> A: Georgia.

(J.A. 244-45.) Over Henderson's objections, the district court conditionally admitted the testimony regarding Harmick's statements under the coconspirator exception of the Federal Rules of Evidence "subject to a later demonstration of [its] admissibility by a preponderance of the evidence." *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979).

Sandridge also testified regarding a purchase from Henderson which was arranged by Hamrick. According to Sandridge, Hamrick assisted him in purchasing nine ounces of cocaine from Henderson. Later, however, when the cocaine would not "cook" into crack cocaine he contacted

Hamrick, who then called Henderson for assistance. Sandridge further testified that although he never saw Henderson with Hamrick, nor did he see Henderson give Hamrick drugs, he frequently observed Henderson visiting Hamrick's apartment.

### 2. Co-Conspirator Exception

Under the Federal Rules of Evidence, an out-of-court statement is admissible when made by a "coconspirator of a party during the course of and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). An out-of-court statement is admissible under the coconspirator exception when the offering party proves three foundational prerequisites: (1) that a conspiracy existed; (2) that the defendant was a member of the conspiracy; and (3) that the statement was made during the course of and in furtherance of the conspiracy. *United States v. Conrad*, 507 F.3d 424, 429 (6th Cir. 2007); *Payne*, 437 F.3d at 544 (citing *United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir. 1992)(en banc)); *United States v. Clark*, 18 F.3d 1337, 1341 (6th Cir. 1994). "If it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was made in furtherance of the conspiracy, the hearsay is admissible." *United States v. Hitow*, 889 F.2d 1573, 1581 (6th Cir. 1989). Stated differently, the three foundational prerequisites must be proven by a preponderance of the evidence. *Clark*, 18 F.3d at 1341.

In assessing whether the offering party has met its burden, the district court may consider the hearsay statement itself. *Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987); *Vinson*, 606 F.2d at 153. Because "out-of-court statements are presumptively unreliable," *Clark,* 18 F.3d at 1342, the hearsay statement alone is insufficient to establish the requirements for admission under Fed. R.

9

Evid. 801(d)(2)(E). Rather, the proponent of the statement must submit some independent evidence of its veracity. In *Clark*, this Court noted that "'[s]ome' independent evidence is not merely a scintilla, but rather enough to rebut the presumed unreliability of hearsay." 18 F.3d at 1342. Henderson does not contest the district court's finding that a conspiracy existed,[1] rather he asserts that the government did not establish that Hamrick was a member of the conspiracy or that the alleged statements were made in the course of and in furtherance of the conspiracy.

### a.      Membership in the Conspiracy

A statement is admissible under the coconspirator exception where the proponent of the evidence demonstrates that the defendant was a member of the alleged conspiracy. Henderson does not challenge the sufficiency of the evidence establishing that he was a member of the conspiracy; rather, he alleges that there was insufficient evidence regarding Hamrick's role as a co-conspirator. Henderson's argument is unpersuasive.

---

[1]However, even if Henderson were to challenge the district court's finding regarding the existence of a conspiracy, it is clear that the district court did not err in its preliminary finding that a conspiracy existed as measured by a preponderance of the evidence. To establish a conspiracy, it must shown that there was an agreement between two or more people to distribute drugs and that Defendant entered into the agreement. *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1989). As an initial matter, the hearsay statements support a finding of a conspiracy. Indeed, Hamrick's statements identifying Henderson as his supplier and Henderson's source in Atlanta support a finding that a so-called "chain" conspiracy to distribute drugs existed. Moreover, independent evidence supports the finding that a conspiracy existed. During Henderson's trial, a number of witnesses, including Detective Narramore, Garner and Jones, testified regarding the acquisition and distribution of cocaine that formed the basis of the district court's conspiracy finding. Additionally, the government presented evidence of the 170 grams of cocaine found in the possession of Henderson at the time of his initial arrest for distribution of cocaine. Taken together, the evidence produced by the government supports a finding that a conspiracy existed by a preponderance of the evidence inasmuch as it serves as circumstantial evidence of a common plan to distribute drugs obtained in Atlanta to various buyers in Chattanooga.

In the instant case, there is ample evidence to support a finding that Hamrick was a member of the conspiracy to distribute drugs. The district court considered evidence of Hamrick's "knowledge of a large operation" in the form of Hamrick's statement that Henderson was his supplier as well as his knowledge of Henderson's source in Georgia. Furthermore, the evidence on the record supports an inference that Hamrick acted to further the object of the conspiracy to distribute cocaine when he arranged for Henderson to sell cocaine to Sandridge and later intervened when Sandridge questioned the quality of the product sold by Henderson. Thus, Sandridge's testimony supports the contention that Hamrick was involved in a conspiracy to distribute cocaine.

### b. Statements Made During the Course of and in Furtherance of the Conspiracy

Additionally, for a statement to be admissible under the coconspirator exception, it must have been made during the course of and in furtherance of the conspiracy. "A statement is 'in furtherance of' a conspiracy if it is intended to promote the objectives of the conspiracy.'" *Clark*, 18 F.3d at 1342. "There is a range of statements that are deemed to be in furtherance of a conspiracy for purposes of admission under Rule 801(d)(2)(E)." *United States v. Franklin*, 415 F.3d 537, 552 (6th Cir. 2005). Statements have been found to be in furtherance of a conspiracy where they "identify other coconspirators and their roles," apprise other coconspirators of the status of the conspiracy, or indicate "the source or purchaser of controlled substances." *Hitow*, 889 F.2d at 1581 (collecting cases). A statement may be in furtherance of a conspiracy "even if not exclusively, or even primarily, made to further the conspiracy." *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000) (internal citations omitted). While the statement "need not actually further the conspiracy" to be admissible, *United States v. Salgado*, 250 F.3d 438, 450 (6th Cir. 2001), "mere idle chatter or

casual conversation about past events is not considered a statement in furtherance of the conspiracy." *United States v. Darwich*, 337 F.3d 645, 657 (6th Cir. 2003).

The district court did not err in admitting the alleged co-conspirator statements inasmuch as the government demonstrated that the statements were made during the course of and in furtherance of the conspiracy by a preponderance of the evidence. In the instant case, it is clear from Sandridge's testimony that Hamrick identified Henderson as his supplier and Henderson's ultimate source in Georgia during the course of the conspiracy. From the context of the statements, it can be inferred that the statements were not "mere idle chatter," but rather identified "the source or purchaser of controlled substances" that were involved in the conspiracy. *Hitow*, 889 F.2d at 1581. Indeed, "if it is more likely than not that the declarant and the defendant were members of the conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the [statements] are admissible." *Id.* Thus, the district court did not err in admitting the coconspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).

**II.      Jury Instructions Regarding Corroboration of Post-Arrest Statements**

   **A.      Standard of Review**

This Court "review[s] jury instructions as a whole to determine if they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision and will reverse a jury verdict on account of an instructional error only in situations where the instruction, viewed as a whole, is confusing, misleading, and prejudicial." *United States v. Blackwell*, 459 F.3d 739, 764 (6th Cir. 2006).

12

This Court "reviews a district court's refusal to give requested jury instructions under an abuse of discretion standard." *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000). A refusal to give a requested instruction is an abuse of discretion requiring reversal if the instruction is "(1) a correct statement of the law; (2) not substantially covered by the charge actually delivered to the jury; and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Franklin*, 415 F.3d 537, 553 (6th Cir. 2005).

**B.     Analysis**

Henderson argues that the district court erred in rejecting his proposed instruction regarding corroboration of post-arrest statements. We disagree.

After closing arguments, Henderson requested the following jury instruction regarding his post-arrest statement to police:

> The defendant is alleged to have made a statement to the police after he was taken into custody in 2002. There is a difference between an admission by a defendant after the crime has been committed and a defendant who admits similar facts before, or during the commission of, a crime. The defendant's out-of-court admission must be corroborated in the former situation, but need not be corroborated in the latter instance. The rationale underlying this rule is that out-of-court admissions occurring after a crime has been completed are less reliable than similar admissions made beforehand. *Opper v. United States*, 348 U.S. 84, 89-91 (1954).

(J.A. at 93-94.) The district court found the requested instruction unnecessary, noting that "this is not a case where the sole evidence, even the primary evidence, against the defendant is the confession." (J.A. at 303.)

Henderson contends that his requested instruction would have given the jury the proper guidance regarding the evaluation of evidence necessary to support his conviction. The government

maintains that the district court properly refused to give the requested instruction because it misstated the law and the failure to give the instruction did not substantially impair Henderson's defense. Thus, the dispute regarding the requested instruction centers around whether it correctly summarized the legal standard for corroboration and whether Henderson's defense was impaired by its omission from the jury instructions. We discuss each point of contention in turn.

### 1. Correct Statement of the Law

This Court has held that to obtain a requested jury instruction, the instruction must be an accurate statement of the law. *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991). Henderson's requested instruction regarding the corroboration of post-arrest statements was based upon *Opper v. United States*, 348 U.S. 84 (1954). In *Opper*, the Supreme Court held that post-arrest admissions and confessions "are of the same character" and thus both require corroboration of the essential facts admitted by a defendant. *Id.* at 163. The purpose of requiring corroboration of such statements is to "prevent 'errors in convictions based upon untrue confessions alone.'" *United States v. Marshall*, 863 F.2d 1285, 1287 (6th Cir. 1988) (quoting *Smith v. United States*, 348 U.S. 147, 153 (1954)).

As we observed in *United States v. Marshall*, "[t]his Circuit has long followed the principle enunciated in *Opper* and *Smith*, that a defendant's extrajudicial, post-offense statements must be corroborated with independent evidence in order to assure reliability and truthfulness." 863 F.2d at 1287; *see also United States v. Trombley*, 733 F.2d 35, 37 (6th Cir. 1984). In *Marshall*, a defendant was charged with the distribution of two grams of cocaine based primarily on taped admissions to an FBI informant who sought to sell the defendant cocaine. 863 F.2d at 1286. During taped

conversations, the defendant accepted a sample of cocaine and stated that "some of his friends were interested in buying drugs." *Id*. After being convicted of the distribution offense, the defendant alleged that the district court erred in failing to instruct the jury that it could not find him guilty of distribution of cocaine based solely on uncorroborated statements. *Id.* Based on *Opper* and *Smith*, we reversed, finding that "[i]ndependent corroborating evidence . . . is necessary to establish the reliability of the statements." *Id.* at 1288. Thus, it appears at first blush that Henderson's requested instruction was a correct statement of the law.

The government, however, argues that corroboration of a post-arrest statement is not required where independent evidence, in the form of drugs seized from a defendant, serves as the *corpus delicti* of the crime. Indeed, this Court has noted "that proof that the criminal act took place–the so-called '*corpus delicti*'–will satisfy the corroboration requirement." *Marshall*, 863 F.2d at 1287. Thus, where such *corpus delicti* is offered into evidence, separate corroboration of a post-arrest statement is not required.

The government contends that the 170 grams of cocaine found in Henderson's possession serve as the *corpus delicti* of the conspiracy offense, thus negating any need for an instruction regarding corroboration. In interpreting when drugs may serve as the *corpus delicti* of a drug offense, this Court has drawn distinctions between offenses based on possession or intent to distribute and conspiracy offenses. *Compare United States v. Calhoun*, No. 92-2011, 1993 WL 280324, at * 4 (6th Cir. July 26, 1993) (unpublished) (finding that four bags of cocaine did not constitute *corpus delicti* in a conspiracy offense and thus corroboration of post-arrest statement was required), *with United States v. Harris*, No. 93-5706, 1994 WL 47806, at *4 (6th Cir. Feb. 15, 1994)

(unpublished) (finding corroboration of post-arrest statement unnecessary because defendant's possession of cocaine served as the *corpus delicti* of intent to distribute offense).

When read together, *Calhoun* and *Harris* stand for the proposition that a defendant's possession of drugs does not eliminate the requirement that post-arrest statements be corroborated by additional independent evidence in the context of conspiracy offenses. Such a reading of the two cases is appropriate inasmuch as the critical element of conspiracy is not merely the distribution or possession of drugs, but an *agreement* among two or more parties to engage in such distribution or possession. Similarly, in the instant case, the agreement between Henderson and others to distribute drugs is a critical element of the offense with respect to both the overall conspiracy as well as the drug quantity alleged to have been involved in the conspiracy. Thus, while drugs may serve as evidence of a conspiracy, they do not remove the need for corroborating evidence of post-arrest statements regarding the conspiracy.

The government, however, persists in arguing that an instruction regarding corroboration was unnecessary given that the post-arrest statement was not the only evidence of Henderson's guilt. This Court has held that such an instruction is required notwithstanding the existence of additional corroborating evidence. Indeed, as this Court noted in *Marshall* under similar circumstances, "[t]he record reveals some evidence which may tend to corroborate defendant's statements that he distributed cocaine, but the jury was never advised that corroboration was necessary." 863 F.2d at 1288. Therefore, this Court concluded that "[t]he district court's refusal to give the requested corroboration instruction was erroneous . . . ." *Id.* Thus, it appears that Henderson's jury instruction correctly stated the law with respect to corroboration of his post-arrest statement.

16

### 2. Failure to Give Requested Instruction Did Not Substantially Impair Defense

Although Henderson's requested jury instruction was a correct statement of the law, we find that the district court's failure to give the requested instruction did not substantially impair Henderson's defense. In the instant case, during closing arguments to the jury, defense counsel contended that the post-arrest statements made by Henderson were unreliable based on the coercive circumstances under which they were given. Defense counsel further contended that the drug quantities discussed during the interview were attributable to Baker, not Henderson. The jury considered the evidence presented at trial and the arguments made by the defense and ultimately convicted Henderson of conspiracy to distribute cocaine. Notably, it appears that the jury took the arguments made by the defense to heart inasmuch as they found that the government did not prove that Henderson was guilty of conspiring to distribute five or more kilograms of cocaine beyond a reasonable doubt, instead finding that it was proven that he conspired to distribute 500 grams of cocaine. Therefore, although the district court erroneously refused to give Henderson's requested instruction, Henderson's defense was not substantially impaired. Consequently, Henderson is not entitled to a reversal of his conviction on this ground.

## III. Sentencing Guidelines Calculations

### A. Standard of Review

Henderson alleges that his sentence is procedurally unreasonable because the district court erred in calculating the applicable Guidelines range. At sentencing, district courts are required to consult the Guidelines as part of their consideration of the § 3553(a) factors. As the Supreme Court recently noted in *Gall v. United States*, 128 S.Ct. 586, 596 (2007), "a district court should begin all

sentencing proceedings by correctly calculating the applicable Guidelines range." Indeed, "the Guidelines should be the starting point and the initial benchmark." *Id.*

As part of our review of procedural reasonableness, this Court must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Gall*, 128 U.S. at 597. This Court's "reasonableness review focuses on the factors listed in § 3553(a), one of which is the Sentencing Guidelines themselves." *United States v. Duckro*, 466 F.3d 438, 442 (6th Cir. 2006).

This Court has observed that "a district court's misinterpretation of the Guidelines effectively means that it has not properly consulted the Guidelines." *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005). We review the district court's legal conclusions regarding the Sentencing Guidelines *de novo*. *United States v. Levy*, 250 F.3d 1015, 1017 (6th Cir. 2001). The district court's determination of the quantity of drugs used to calculate a defendant's Guidelines range, however, is a finding of fact that should be upheld unless clearly erroneous. *United States v. Wilson*, 954 F.2d 374, 376 (6th Cir. 1992). A factual finding is clearly erroneous "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006).

B. **Analysis**

Henderson contends that the district court committed procedural error in calculating the applicable Guidelines range based on (1) the district court's calculation of the drug quantity

18

attributable to him; (2) the district court's failure to apply a reduction for acceptance of responsibility; (3) the district court's denial of his request for a "minor role" reduction; and (4) the district court's finding that he was not eligible for "safety valve" protection under the Guidelines. For the reasons discussed below, we find each of these contentions to be without merit.

### 1. Drug Quantity Calculation

Henderson contends that the district court erred in its determination of the drug quantity attributable to him. Henderson asserts that the district court impermissibly established his offense level based on a drug quantity greater than the amount found by the jury on its special verdict form. The special verdict form indicated that the jury found Henderson guilty of conspiracy. However, the jury found that the government had not proven, beyond a reasonable doubt, that the conspiracy involved five kilograms of cocaine. Instead, the jury found that the conspiracy involved 500 or more grams of cocaine. At sentencing, however, the district court held Henderson accountable for five kilograms of cocaine. Essentially, Henderson argues that the district court improperly considered acquitted conduct in calculating the drug quantities attributable to him. The government, for its part, argues that neither *United States v. Booker*, 543 U.S. 220 (2005), nor its progeny, prohibit a district court from sentencing a defendant based on facts not found by a jury when the resulting sentence is below the statutory maximum.

A defendant convicted of conspiracy may be held responsible for the conduct of others within the conspiracy. USSG § 1B1.3(a)(1)(B). In interpreting § 1B1.3(a)(1)(B) of the Guidelines, this Court has explained that "the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of

conspiracy." *United States v. Swiney*, 203 F.3d 397, 402 (6th Cir. 2000). Under this narrower scope, a district court may hold a defendant accountable only for that conduct which is reasonably foreseeable within the confines of the conspiracy. In applying the Sentencing Guidelines to particular defendants who have been convicted for their role in a conspiracy, a district court must differentiate between the coconspirators and make individualized findings of fact for each defendant. *United States v. Meacham*, 27 F.3d 214, 217 (6th Cir. 1994). The government must prove the amount of drugs a defendant is responsible for by a preponderance of the evidence. *Id.*

We find that the district court did not err in calculating the drug amount attributable to Henderson. Henderson's argument to the contrary is directly foreclosed by *United States v. Mendez,* 498 F.3d 423 (6th Cir. 2007), where this Court confronted a nearly identical set of facts. In *Mendez*, the defendant was convicted of conspiracy to distribute methamphetamine. The jury indicated that the government did not prove, beyond a reasonable doubt, that the conspiracy involved 500 grams of methamphetamine. *Id*. at 425. The jury did find, however, that the conspiracy involved at least 50 grams of the drug. *Id.* Notwithstanding the jury's verdict regarding the drug quantity, the district court attributed 2.95 kilograms of methamphetamine to the defendant based the testimony of a government witness. *Id*. This Court affirmed, holding that a sentencing court may consider "'acquitted conduct' if it finds facts supporting that conduct by a preponderance of the evidence." *Id.* at 427. In *United States v. White*, --- F.3d ---, 2008 WL 5396246, at *3 (6th Cir. 2008) (en banc), this Court reaffirmed the rule from *Mendez*, holding that, "[s]o long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge

the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range."

This case involves facts similar to those in *Mendez*. In this case, the jury found that the government did not prove beyond a reasonable doubt that the cocaine conspiracy involved five kilograms of cocaine, but rather that the conspiracy involved at least 500 grams of cocaine. Nevertheless, the district court attributed the higher drug quantity amount to Henderson based on the testimony of Detective Narramore, who testified that Henderson and Baker procured at least five kilograms of cocaine over the course of three separate visits to Atlanta. Based on Narramore's testimony, the district court could have found a conspiracy to possess at least five kilograms by a preponderance of the evidence, even though the jury did not find a conspiracy to possess that amount beyond a reasonable doubt. The district court therefore did not err in calculating the drug quantity.

### 2. Acceptance of Responsibility

Under § 3E1.1(a) of the Guidelines, a defendant is entitled to a two-level reduction of his base offense level where he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction" as well as any relevant conduct "will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a)." *Id.* at cmt. 3. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. *Id.*

Although a defendant who proceeds to trial is generally not eligible for an acceptance of responsibility reduction, there may be "rare situations" in which a reduction is appropriate

notwithstanding the defendant's "exercise of his constitutional right to a trial." *Id.* "In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.* The defendant has the burden of establishing that he is entitled to a reduction for acceptance of responsibility by a preponderance of the evidence. *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001).

Henderson argues that he established that he is entitled to a two-level reduction for acceptance of responsibility by a preponderance of the evidence. Henderson asserts that evidence of his attempted guilty plea, cooperation with local and federal law enforcement officers following his arrest, and his actual guilty plea to Count Three of the indictment demonstrate that he has accepted responsibility for his offense. This contention is without merit.

While it may be the case that Henderson provided assistance to law enforcement and attempted to plead guilty, the district court determined that Henderson's subsequent evasive statements during a pre-trial suppression hearing indicated that Henderson did not accept responsibility for his offense. For example, during his testimony at the suppression hearing, Henderson testified that at the time of his arrest he had never met Baker, which contradicted his prior statement to police. Although the contradictions were not enough to support an enhancement for obstruction of justice, Henderson's actions leading up to trial were inconsistent with acceptance of responsibility and served to "outweigh" his prior cooperation with law enforcement. *See United States v. Van Shutters*, 163 F.3d at 331, 340-41 (6th Cir. 1998) (affirming a denial of an acceptance of responsibility adjustment despite defendant's cooperation with law enforcement where defendant did not express remorse and was untruthful during his sentencing hearing). Thus, the district court's

factual findings were not clearly erroneous and therefore the acceptance of responsibility reduction was properly denied.

### 3. Minor Role Reduction

Henderson alleges that the district court erred in denying his request for a "mitigating role" reduction pursuant to U.S.S.G. § 3B1.2 based on his minor role in the conspiracy to distribute cocaine. Whether a defendant qualifies for a role reduction "depends heavily on factual determinations," which we review for clear error. *United States v. Campbell*, 279 F.3d 392, 396 (6th Cir. 2002). This Court, however, reviews the application of the Guidelines to a particular set of facts *de novo. United States v. Levy*, 250 F.3d 1015, 1017 (6th Cir. 2001).

Under § 3B1.2, a defendant is entitled to a two-level reduction to his offense level where "the defendant was a minor participant in any criminal activity" involving more than one person. U.S.S.G. § 3B1.2(b). A "minor participant" is defined as a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. 5. Thus, the critical question in whether to grant a "mitigating role" reduction is what role the defendant played in relation to others involved in the criminal enterprise. *Campbell*, 279 F.3d at 396 ("The salient issue is the role the defendant played in relation to the activity for which the court held him or her accountable."). Where a defendant is held accountable only for the amount of drugs attributable to him, he is not entitled to a role reduction because the individual determination has already taken the defendant's limited role into account, thus negating any basis for comparison to others involved in the criminal activity. *Id.*

Henderson alleges that because he was held accountable for five kilograms, the entire amount of cocaine involved in the conspiracy, he is entitled to a "mitigating role" reduction. Henderson argues that he played a "minor" role within the scope of the conspiracy when compared with Baker because "[h]e did not know Myron Baker's supplier, and did nothing more than obtain his own drugs, after Baker obtained his." (Def. Br. at 42) This contention, however, is belied by the record.

As an initial matter, Henderson's role in the conspiracy was far greater than other participants such as Hamrick, who was merely a purchaser. Thus, Henderson was more culpable than other participants in the conspiracy to distribute cocaine. The district court, therefore, did not err in concluding that Henderson was not entitled a "mitigating role" reduction based on his "minor" participation in the conspiracy.

Moreover, it appears that rather than being a minor participant, Henderson was an indispensable figure within the conspiracy and thus not entitled to a "mitigating role" reduction. In *United States v. Samuels*, 308 F.3d 662 (6th Cir. 2002), this Court held that "[t]hose participants who are indispensable to the conspiracy are not entitled to a role reduction pursuant to U.S.S.G. § 3B1.2." *Id.* at 672. There, this Court rejected the application of a "minor role" reduction for a defendant who "played a key role in brokering the drug transaction" by serving as a middleman to various parties. *Id.* at 672.

In the case at bar, the district court relied on the testimony of Detective Narramore regarding Henderson's travels to Atlanta for the purposes of securing cocaine for resale in Chattanooga. Detective Narramore testified that Henderson gave money to Baker for the purchase of up to three kilograms of cocaine, of which Henderson obtained up to one-half of a kilogram. Detective

Narramore testified that the utility of this practice "boils down – just like your economy today, the more bulk you buy, in business or anything, the better price that you would get for it." (J.A. at 184.) This pooling of resources with Baker does not signify a "minor role" in a conspiracy to possess or distribute cocaine; rather, it establishes Henderson as a central figure in the acquisition of cocaine from Baker's source in Atlanta. Surely it can be inferred that the conspiracy might not have been as economically viable in the absence of Henderson's contribution and therefore the district court did not clearly err in reaching the conclusion that Henderson occupied more than a "minor" role in the conspiracy. Thus, as an indispensable figure, Henderson was not entitled to a "mitigating role" reduction pursuant to § 3B1.2 of the Guidelines.

### 4.      Safety Valve Application

Henderson challenges the district court's finding regarding his eligibility for the "safety valve" provision of the Guidelines. Specifically, Henderson asserts that the district court erroneously denied his request for the application of the "safety valve" provision based on the government's representations that Henderson did not truthfully disclose all information concerning his offense. The district court's determination regarding whether a defendant met the requirements for the application of a "safety valve" adjustment is a finding of fact that should be upheld unless clearly erroneous. *United States v. Adu*, 82 F.3d 119, 123-24 (6th Cir. 1996).

Under § 5C1.2 of the Guidelines, a court may sentence a defendant below the statutory minimum where the five criteria enumerated in the provision are satisfied.[2] *Id.* at 121. While the

---

[2]The five criteria set forth in U.S.S.G. § 5C1.2 are as follows:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of 4A1.3 (Departures Based on Inadequacy of Criminal History

25

parties agree that four of the five criteria have been met by Henderson, they dispute whether Henderson established the fifth criteria outlined in § 5C1.2. Subsection (a)(5) of § 5C1.2 provides that

> (a) . . . in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below.
> ***
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(5); 18 U.S.C. § 3553(f)(5). Henderson, as the party seeking the application of the "safety valve provision," has the burden of proving that he is entitled to the "safety valve" by a preponderance of the evidence. *United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001); *Adu*, 82 F.3d at 123. In meeting this burden, "[t]he defendant is required to provide complete information

---

Category);

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

regarding not only the offense of conviction, but also any relevant conduct, including disclosure of information regarding the participation of other people in the offense." *Salgado*, 250 F.3d at 459 (citing *United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997)).

As this Court has noted, Congress enacted the "safety valve" provision to "more equitably mete out justice to cooperating individuals playing minor roles in such conspiracies." *United States v. O'Dell*, 247 F.3d 655, 674 (6th Cir. 2001). Indeed, "[t]hese stringent requirements reflect the fact that the safety valve 'was intended to benefit only those defendants who truly cooperate.'" *Salgado,* 250 F.3d at 475 (quoting *United States v. Marin*, 144 F.3d 1085, 1094 (7th Cir. 1998)).

Before the district court at sentencing, Henderson requested the application of the safety valve and introduced evidence of his cooperation in the form of reports from the Chattanooga Police Department detailing information provided by Henderson regarding Baker. (J.A. at 101-05.) The government, although acknowledging that Henderson provided information, opposed the application of the safety valve on the basis that "[h]e did not tell us the truth, did not give us the full extent of his involvement." (J.A. at 382.) As proof, the government threatened to introduce a witness who would testify regarding additional trips made to Atlanta by Henderson which were not disclosed to the government. The district court, however, did not hear from the government witness and simply sustained the government's objection after noting that disclosure of the entire scope of involvement is a "necessary element" for the application of the "safety valve" adjustment.

The district court did not err in refusing to apply the safety valve provision to Henderson. Although Henderson produced evidence of his cooperation, the district court also heard evidence regarding his lack of transparency pertaining to his statements to police and the scope of his

involvement with the conspiracy. We do note, however, that the district court did not actually hear from the government's witness regarding Henderson's additional trips to Atlanta. Nevertheless, the burden was on Henderson, not the government, to establish his eligibility for the safety valve. Indeed, "[w]here the government challenges a defendant's claim of complete and timely disclosure and the defendant does not produce evidence that demonstrates such disclosure, a district court's denial of a request to apply a § 3553(f) and § 5C1.2(5) is not clearly erroneous." *Salgado*, 250 F.3d at 460. Inasmuch as Henderson was not completely forthright in his representations during the suppression hearing or regarding the full scope of his involvement with the conspiracy, he did not meet his burden and thus was not entitled to protection under the "safety valve" provision of the Guidelines.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.