NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0183n.06

Case No. 13-2452

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Mar 09, 2015 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| TIMOTHY THOMAS SIMS, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

**BEFORE: KEITH, COOK, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** Defendant-Appellant Timothy Sims ("Sims") (1) pled guilty to two counts of receipt and possession of images of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and 18 U.S.C. § 2252(a)(2) and (b)(1), and (2) was found guilty by a jury of three counts of attempted sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) and (e). Sims appeals, arguing (1) his convictions on the attempted sexual exploitation charges should be vacated because the district court erroneously denied his motion to suppress statements obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and (2) the district court erred in denying him a two-level reduction in his total offense level based on his acceptance of responsibility. Because Sims' appeal of the district court's suppression ruling is both moot and waived, and because the district

court did not commit clear error in denying Sims a reduction for acceptance of responsibility, we **AFFIRM** the judgment of the district court.

I.

On December 23, 2010, Bobby Mast reported to Ionia County Child Protective Services ("CPS") and the Lake Odessa Police Department that his seven-year-old daughter, B.M., had disclosed to him that her mother, Andrea Mast ("Mast"), had taken naked photographs of her and had been emailing them to a man named Tim. B.M. was interviewed by CPS, and confirmed what her father reported to the authorities. B.M. further reported that her mother directed her how to pose for these pictures. On December 28, 2010, police officers in Evart, Michigan accompanied a CPS worker to Mast's residence. Mast, when asked to identify Tim, reported that she could only identify him by his first name; that she met Tim on "Plenty of Fish," an online dating website; that his screen name was "bigfun4money2"; that he lived in Big Rapids, Michigan; and that he had been to her house on several occasions. B.M., amongst other details, reported that on one of these occasions her mother performed a sex act on Tim while B.M. was seated next to him on a couch with his arms around her.

Images of "Tim" from the Plenty of Fish website were shown to law enforcement officers, including Detective George Pratt of the Michigan State Police ("Detective Pratt"). Detective Pratt recognized the picture of Tim and identified him as Timothy Sims, with whom he had had previous contact.

On December 29, 2010, police executed search warrants for Sims' and Mast's respective homes. At the time, Sims was living with Sonya Lund ("Lund") and her two daughters, M.P. and C.P. During the search of Sims' residence, police seized his laptop and his iPhone; no images of B.M. were found on either device. However, during a subsequent forensic

examination, law enforcement discovered three videos on Sims' iPhone, which were recorded on September 12, 2010, September 22, 2010, and September 28, 2010. In each video, the person recording was standing outside Sims' residence and looking through partially opened horizontal blinds. The window looked into M.P.'s bedroom. In the videos, M.P., then thirteen-years-old, appears to have just gotten out of the shower. The videos depict her naked, drying off with a towel, and then dressing. M.P. is not engaged in any sexual activity, nor is she posing for the camera. There is no indication that M.P. was aware that she was being watched or recorded. M.P.'s pubic area is observed in each of the videos. The videos stop as soon as M.P. puts her clothing on. Two of these videos had been transferred onto Sims' laptop.

It is undisputed that, during the search, Sims indicated he wanted to make a statement and voluntarily went to the Evart Police Department for an interview that same day. It is also undisputed that Sims was not in custody and was never told that he was not free to leave. Although he was not under arrest, Sims was verbally advised of his *Miranda* rights. Sims also signed an Advice of Rights form, acknowledging that he read and understood his *Miranda* rights and had not been pressured or threatened into making a statement to the police. During the interview, which was videotaped, Sims made admissions regarding his relationship with Mast, including receiving naked photographs of B.M.

Law enforcement subsequently obtained search warrants for Sims' and Mast's respective Yahoo! email accounts. The searches revealed, among other things, five images of B.M. taken by Mast, in which B.M. is unclothed and the exhibition of her pubic area is the primary focus. These images were taken on November 22, 2010, and sent by Mast to Sims on November 22, 2010, and November 23, 2010. Police also obtained Sims' Yahoo! Messenger records, which revealed sexually explicit chats with C.P., M.P.'s older sister, from February 2008. At that time,

C.P. was thirteen-years-old.  In the chats, Sims made various sexual overtures toward C.P., and encouraged her to delete their messages.

Sims was arrested on February 15, 2011.  Following his arrest, on March 25, 2011, Lund turned over to law enforcement two recently-discovered compact discs belonging to Sims.  Law enforcement examined the two compact discs, and identified materials depicting the sexual abuse of children.  One disc contained a total of 2,421 images and one video of child pornography. The second disc contained 1,562 images and one video of child pornography.

Sims was ultimately charged, in a Second Superseding Indictment, with five counts of attempted production, receipt, and possession of images of minors engaged in sexually explicit conduct.[1]  Counts One, Two, and Three charged Sims with attempted sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) and (e).  These counts related to Sims' attempt to produce videos of M.P. that depicted the lascivious exhibition of her pubic area.  Count Four charged Sims with possessing images of minors engaged in sexually explicit conduct and the lascivious exhibition of their genitals and pubic areas, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  Count Four related to three sets of images: (1) the three videos of M.P. charged in Counts One, Two, and Three; (2) the five still images of B.M. created by Mast and emailed to Sims on November 22, 2010 and November 23, 2010; and (3) the two discs discovered by Lund containing over 80-90 images of child pornography.  Count Seven charged Sims with receipt of visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).  Count Seven related to the images of B.M. sent to Sims by Mast.  Sims pled guilty to the charges related to B.M. (Counts Four and Seven) on October 21, 2011, without

---

[1]Mast, Sims' co-defendant, was charged with producing sexually explicit images of B.M. (Count Five), distributing those images to Sims (Count Six), and possessing sexually explicit images of a child (Count Eight).  On September 23, 2011, Mast pled guilty to producing the sexually explicit images of B.M. (Count Five) and was sentenced to 360 months of imprisonment.

a plea agreement. Following a two-day jury trial that began on May 28, 2013, Sims was convicted of the remaining counts related to M.P. (Counts One, Two, and Three).[2]

Sims participated in a presentence interview completed by the U.S. Probation Office. During the interview, Sims reported that "he spent the last couple years, sober, thinking about acceptance of responsibility and what he had done wrong in the instant offenses." Nevertheless, Sims also appeared to attribute his crimes to depression and drug and alcohol use. He reported that "one bad decision led to another and he began compromising his usual high morals." Sims also "attributed his relationship with Ms. Lund and lifestyle as a large part in why he committed the instant offense." Specifically, Sims claimed his substance abuse began during his relationship with Lund, that the two had led a sexually promiscuous lifestyle as "swingers," and

---

[2]The delay between Sims' guilty plea and his trial was, in part, the result of an interlocutory appeal taken by the government. Sims pled guilty four days prior to his original trial date of October 25, 2011. In September 2011, Sims had moved to sever the charges into two groups: those related to the video images of M.P. and those that involved other child pornography. Sims also moved in limine to exclude the presentation of any evidence of a sexual nature, including the other child pornography, from the trial for attempted production. At a final pretrial conference held on October 17, 2011, the district court orally denied the motion to sever the charges. The district court orally granted the motion in limine in part and denied the motion in part. Specifically, the district court excluded evidence related to adult pornography, including images of Sims and Lund, and excluded the sexually explicit chat with C.P. and all of the other communications with others where Sims expressed a sexual interest in children. The court declined to exclude the images of child pornography on the two discs that were the subject of Count Four or any of the evidence related to Mast and B.M. The court ruled that the government would be permitted to argue that the evidence was relevant to Sims's intent to create sexually explicit videos of M.P.

Following Sims' guilty plea, the district court reconsidered Sims's motion in limine and granted the motion in total. Accordingly, the court held that the government could not use Sims' plea admissions at trial. The government filed an interlocutory appeal. *United States v. Sims*, 708 F.3d 832 (6th Cir. 2013). A majority of this Court reversed the district court's decision to exclude all evidence of Sims' possession of child pornography, and remanded with instructions to balance the probative value and the prejudicial effect of the evidence. *Id.* at 835-36. Following remand, the parties presented the district court with a proposal for the exclusion and admission of other acts evidence, which the district court approved on May 8, 2013.

that he "became fairly desensitized to sex and began making irrational decisions, leading up to his behavior in the instant offense."

The probation officer recommended that the district court deny Sims a reduction in his total offense level based on acceptance of responsibility. Sims made a number of objections to the presentence investigation report ("PSR"). Relevant here is Sims' objection that he had "adequately express[ed] acceptance," and that his statements during the presentence interview were merely an attempt to "explain his thoughts about why he had gotten himself in so much trouble." In response, the probation officer noted that Sims "has denied certain conduct relevant to the counts of convictions," such as denying that he had a sexual encounter with Mast in front of B.M. The probation officer noted that this denial was contradicted by B.M. and by text messages between Sims and Mast. Accordingly, the probation officer again reiterated his judgment that Sims "has [not] fully accepted responsibility for his conduct and is not entitled to a two level reduction for acceptance of responsibility."

The district court held Sims' sentencing hearing on October 23, 2013, and entered judgment that same day. The government presented the statement made by B.M. regarding the sex act her mother performed on Sims in her presence. The government further noted that B.M.'s statement was corroborated by an affidavit from her mother, and by text messages between Sims and Mast. These text messages specifically referenced the encounter, and included numerous responses from Sims encouraging Mast to keep things to herself and to delete their messages and pictures. The government further argued that Sims challenged the facts at trial and did not admit to the conduct when first approached by law enforcement, which, the government contended, took Sims out of the exception for granting a reduction for acceptance of responsibility after proceeding to trial.

The district court agreed, stating:

> THE COURT: I likewise support the refusal to score the acceptance issue for most of the reasons articulated by [the government]. But even more, I think there is underlying what Mr. Sims said to [the probation officer] during his interview, an evasiveness, a minimization, a denial of behavior that is not only illegal but is just totally unacceptable in any kind of civilized society.

The Sentencing Guidelines recommended a life sentence, which would have resulted in running the sentence for each count consecutively for a total maximum of 120 years. The district court granted Sims' motion for a downward departure, and imposed a sentence of 252 months on Counts One, Two and Three and 120 months on Counts Four and Seven. The sentences for Counts One though Four were ordered to run concurrently, while the sentence for Count Seven was to run consecutive to that, for total of 372 months imprisonment. Sims timely appealed on October 24, 2015.

## II.

## A.

Sims first argues that his convictions on Counts One, Two, and Three should be vacated because the district court erred in denying his motion to suppress statements he made during his interview with the police on December 29, 2010. Sims argues that any statements he made were obtained in violation of *Miranda* and its progeny. We need not reach this issue.

Sims' appeal of the district court's suppression ruling is moot because the government did not introduce at trial any statements Sims made during his interview with law enforcement. *See United States v. Davis*, 531 F. App'x 601, 605 (6th Cir. 2013) (holding that a defendant's challenge on appeal to the denial of his motion to suppress his confession was moot where the confession was never admitted into evidence at trial) (internal citation omitted). Nor was any of the evidence admitted at trial derived from Sims' December 29, 2010 statements. Sims concedes

that the government did not introduce his statements made during the interview at trial, but nonetheless argues that *Davis* is inapposite because the government used his statements against him at sentencing. Specifically, Sims points out that the government argued at sentencing that, because Sims did not admit to his conduct when first approached by law enforcement, this took him out of the exception for granting an offense level reduction for acceptance of responsibility despite proceeding to trial. Sims, however, cites no legal authority for the notion that a district court errs in declining to suppress inculpatory statements made by a defendant—which were not introduced at trial, did not lead to evidence admitted against him at trial, and therefore played no role in a jury's guilty verdict on unrelated charges—based solely on the government's arguments at sentencing. Further, irrespective of what arguments the government made, the district court did not specifically rely on Sims' interview statements when it denied him the reduction. As will be discussed, the principal reasons Sims did not receive a reduction were (1) his denial of certain conduct toward B.M. and (2) his minimization of his overall conduct during his presentence interview—not because of any statements he made during his voluntary December 29, 2010 interview with law enforcement. We are therefore unconvinced by Sims' efforts to distinguish *Davis*.

We further find that Sims has waived any argument that his statements should have been suppressed. At the December 29, 2010 interview, Sims was questioned solely regarding his relationship with Mast and B.M. At the time of the interview, police were unaware of Sims' conduct toward M.P. because his iPhone and laptop had not yet been forensically examined. The convictions that Sims now claims should be vacated due to the denial of his motion to suppress—Counts One, Two, and Three—relate only to M.P. The counts that relate to B.M. are the counts to which Sims pled guilty, without a plea agreement. "It is elemental that a guilty

pleading defendant may not appeal an adverse pre-plea ruling on a suppression of evidence motion unless he has preserved the right to do so by entering a conditional plea of guilty in compliance with Fed[eral] R[ule] [of] Crim[inal] P[rocedure] 11(a)(2). . . ." *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001). Rule 11(a)(2) provides:

> With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

Sims contends that he should be "remov[ed] . . . from the mandates of the Rule 11 Conditional Plea requirements" because he did not have a plea agreement. This argument misapprehends the requirements of Rule 11. Sims is not "removed" from the requirements of Rule 11 by virtue of the fact that he did not have a plea agreement. To the contrary, Rule 11 stands for the proposition that Sims must have entered into a conditional plea agreement in order to preserve his right to appeal a pre-plea suppression ruling. Sims' failure to enter into such a plea agreement means that his claim that the district court erred in denying the suppression motion is not preserved for appeal, and is therefore deemed waived.

B.

Sims, relying on Application Note 2 to U.S.S.G. § 3E1.1, next argues that the district court erred in denying him a reduction when calculating his total offense level for acceptance of responsibility. Sims claims that he has never contested that he was factually guilty of Counts One, Two, and Three—*i.e.*, that he took the videos of M.P., while she was naked, through her bedroom window. Rather, Sims claims that he took these counts to trial merely to challenge the legal implications of his conduct toward M.P.—*i.e.*, whether these images were "sexually explicit conduct" within the meaning of 18 U.S.C. § 2251(a) and (e). This argument is unpersuasive.

We review a trial court's conclusion that a defendant is not entitled to a sentence reduction for acceptance of responsibility under the clearly erroneous standard. *See United States v. Coss*, 677 F.3d 278, 290 (6th Cir. 2012). A defendant is eligible for a two level reduction in his offense level "*[i]f* the defendant *clearly* demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1 (emphasis added). Application Note 2 to § 3E1.1 provides:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, app. n. 2. Application Note 2 thus stands for the proposition that a defendant is not ineligible for an acceptance of responsibility adjustment simply because he exercised his right to proceed to trial. But in order to receive the reduction, the defendant must fall into the "rare situation[]" of "clearly demonstrat[ing] acceptance of responsibility for his criminal conduct" even while challenging his legal guilt at trial. *Id.* In such instance, "a determination that a defendant has accepted responsibility will be based primarily," though not solely, "upon pre-trial statements and conduct." *Id.* In this case, the probation officer, consistent with Application Note 2, correctly noted that "if [Sims] had accepted full responsibility for his conduct and only took the three counts to trial to challenge a legal position, he should in fact receive [credit] for acceptance of responsibility." There is no indication, however, that Sims

accepted full responsibility for his conduct toward B.M. and M.P. There is, at most, only some evidence that Sims accepted some responsibility.

Sims cites the following evidence of his acceptance of responsibility: he pled guilty to the receipt and possession of child pornography charges involving B.M.; he expressed remorse during his change of plea hearing; he did not contest any facts regarding his conduct toward M.P.; he did not contest his factual guilt of this conduct; he entered into various stipulations with the government; and he did not testify on his own behalf at trial. Even if we were to accept that Sims' expression of remorse during his change of plea hearing illustrates his acceptance of responsibility, we find that the import of the other evidence Sims cites is questionable. Sims' guilty plea regarding his conduct toward B.M. is not evidence of his acceptance of responsibility for his conduct toward M.P. Further, there can be any number of reasons why a criminal defendant would elect not to testify on his own behalf, none of which have anything to do with acceptance of responsibility.

More importantly, Sims' assertion that he did not challenge the fact of his guilt is doubtful. To convict Sims of attempted production of child pornography, the government had to prove three things beyond a reasonable doubt: (1) Sims specifically intended to create child pornography when he filmed M.P. nude through her bedroom window; (2) Sims took a substantial step towards creating a sexual explicit image of a minor; and (3) the materials used to create the video image had been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 2251(a) and (e); *see also Sims*, 708 F.3d at 835. The parties agreed, going into trial and at trial, that the pivotal issue for the jury to decide was whether Sims intended to produce

child pornography when he, on several occasions, recorded M.P. getting dressed after taking a shower.[3]

Sims' arguments notwithstanding, "factual guilt" is not limited to a defendant's physical acts—here, recording the videos of M.P. Intent is also a question of fact. *See Morissette v. United States*, 342 U.S. 246, 274 (1952); *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003). Although Sims has conceded that he took the videos of M.P., Sims' defense at trial was that he did not intend to create child pornography because the images of M.P. were not sexually explicit or lascivious in nature; rather, he claimed his conduct was more akin to a "Peeping Tom" scenario. The jury rejected this contention, as evidenced by its guilty verdict. That is to say, the jury rejected Sims' factual claim that he lacked the requisite criminal intent. "[A] defendant who expresses regret for the results of criminal conduct without admitting criminal intent does not accept responsibility within the meaning of the Sentencing Guidelines." *United States v. Williams*, 940 F.2d 176, 183 (6th Cir. 1991); *see also* U.S.S.G. § 3E1.1, app. n. 2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt[.]").

Additionally, with respect to B.M., although Sims may have expressed remorse during his pre-trial change of plea hearing, he later denied certain conduct relevant to the counts of conviction. This conduct was confirmed not only by B.M. herself, but also by Sims' co-defendant and by his own contemporaneous written communications. Denial of relevant conduct is not acceptance of responsibility. *See* U.S.S.G. § 3E1.1, app. n. 1 ("In determining whether a

---

[3]Sims stipulated that the equipment used to produce the images was manufactured outside the State of Michigan and had travelled in interstate and foreign commerce. If the jury found that Sims had the requisite criminal intent, then the substantial step requirement was easily satisfied by the fact that Sims went outside his home, peered through M.P.'s bedroom window, and began filming M.P. as she dressed.

defendant qualifies under [§ 3E1.1], appropriate considerations include . . . truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3. . . . [A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility[.]"); U.S.S.G. § 3E1.1, app. n. 3 ("Entry of a plea of guilty . . . combined with truthfully admitting the conduct comprising the offense . . . will constitute significant evidence of acceptance of responsibility. . . . However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.").

Further, when initially interviewed by the police, Sims sought to minimize his conduct toward B.M. and his relationship with Mast. He also repeatedly encouraged Mast to delete their communications, just as he had earlier with C.P. Evasiveness and attempts to conceal misconduct are inconsistent with acceptance of responsibility. *See United States v. Henderson*, 307 F. App'x 970, 983 (6th Cir. 2009) (finding that a defendant's evasive statements during a pre-trial suppression hearing indicated that he had not accepted responsibility for his offense). Likewise, Sims' suggestion that his actions toward B.M. and M.P. were the result of substance abuse and his "swinger" lifestyle also does not demonstrate acceptance. Far from representing an attempt at "explain[ing] his thoughts about why he had gotten himself in so much trouble," as Sims now argues, these rationalizations can only demonstrate Sims' minimization and denial of inappropriate behavior. *See United States v. Wallace*, 16 F.3d 1223, No. 933287, 1994 WL 43460, at \*1 (6th Cir. 1994) (per curiam) (finding no clear error in district court's denial of an acceptance of responsibility adjustment because "acceptance of responsibility has to be an acceptance without excuses"). Absent from any of Sims' statements during his presentence

interview is any recognition or acknowledgement that he has a clear history of inappropriate sexual interest in children.

Accordingly, we discern no error, much less clear error, in the district court's denial of a reduction for acceptance of responsibility.

III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.